644 F.2d 1251
 23 Fair Empl.Prac.Cas. 287,
25 Fair Empl.Prac.Cas. 1285,
23 Empl. Prac. Dec. P 30,996,
26 Empl. Prac. Dec. P 31,839
Lura Lee SAULSBURY, Plaintiff-Appellant,
v.
WISMER AND BECKER, INC., Defendant-Appellee.
 No. 77-2855.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 3, 1979.
Decided June 6, 1980.
As Amended May 15, 1981.
 
 Mary K. Gillespie, Santa Barbara, Cal., argued for plaintiff-appellant; Burton D. Fretz, Washington, D. C., Willard Hastings, Jr., Santa Barbara, Cal., on brief.
 J. Michael Phelps, San Francisco, Cal., argued for defendant-appellee; Robert M. Lieber, Alan B. Carlson, J. Michael Phelps, Littler, Mendelson, Fastiff & Tichy, San Francisco, Cal., on brief.
 Appeal from the United States District Court for the Central District of California.
 Before SNEED and TANG, Circuit Judges, and JAMESON,* District Judge.
 TANG, Circuit Judge:
 
 
 1
 This appeal arises from the district court's grant of summary judgment to defendant Wismer & Becker, Inc. in an action brought under Title VII of the Civil Rights Act of 1964. The district court held that Saulsbury had not timely filed with the appropriate state agency, because she had not filed a verified complaint with the California Fair Employment Practices Commission (FEPC) within 180 days of her discharge. In the alternative, the court held the complaint in the district court not timely because it was filed less than 180 days after the Equal Employment Opportunity Commission's (EEOC) assumption of jurisdiction. We hold that Saulsbury timely filed her complaint with both the FEPC and the EEOC, and that her suit in district court was also timely filed. We, therefore, reverse the district court.I.
 
 FACTS
 
 2
 Lura Lee Saulsbury was employed as a general construction laborer by Wismer & Becker from November 20, 1974 until she was discharged on May 2, 1975. She had been the only woman working in that position at the construction site of the Diablo Canyon nuclear power plant.
 
 
 3
 On May 13, 1975, Saulsbury sent a letter to the FEPC alleging she had been discharged on account of her sex. On July 17, 1975, the FEPC received a letter from her stating she had written to Mr. Connelly of the FEPC two months before but had not been advised about the status of her case. On July 31, 1975, Simon Connelly, an FEPC consultant wrote to Saulsbury and stated:
 
 
 4
 (T)o enable us to prepare a formal complaint for your signature we need more detailed information.
 
 
 5
 A "pre-complaint form" was enclosed and Connelly wrote:
 
 
 6
 If you will complete it carefully and in detail and return it to us, we should be able to proceed at that time.
 
 
 7
 On August 7, 1975, Connelly again wrote Saulsbury. Apparently she had not received the letter of July 31. The new letter contained a copy of the original letter and a pre-complaint form.
 
 
 8
 At the top of the pre-complaint form appeared the following statement:
 
 
 9
 The information requested on this form will help us to help you. There is no guarantee that the information submitted will constitute the basis for filing a formal complaint.
 
 
 10
 Saulsbury filled out the form and returned it to the FEPC. According to an affidavit filed by the attorney for the defendants, Connelly took no further action regarding the information submitted by Saulsbury because "he believed that the FEPC at that time had no jurisdiction over the matter therein." Nothing in the record indicates that Saulsbury was given any notification of this determination or that she was informed the FEPC would not proceed with the action.
 
 
 11
 On the pre-complaint form, Saulsbury indicated she wished a copy of the complaint forwarded to the EEOC. Nothing in the FEPC files shows this was done, nor do the EEOC files reflect receipt of the complaint. However, after Saulsbury contacted an attorney and when Connelly later transmitted copies of the FEPC file to the attorney, it was noted by Connelly that his file contained only photostatic copies, and "(t)his fact reinforces my memory and belief that at some point all of the correspondence between Ms. Saulsbury and this office was forwarded to Equal Employment Opportunity Commission."
 
 
 12
 On January 28, 1976, 271 days following her discharge, the attorney wrote to the EEOC enclosing a formal discrimination charge and noting that the complaint had been lodged with the FEPC since May 1975 and that the FEPC had indicated its willingness to defer jurisdiction to the EEOC. A right-to-sue letter was requested. On the same date, the attorney also wrote to the FEPC, enclosing a copy of the charge filed with the EEOC and requesting FEPC assistance in deferring the complaint to the EEOC pursuant to an earlier discussion.
 
 
 13
 The charge sent to the EEOC was marked received on February 11, 1976, 285 days after discharge. On March 3, 1976, the EEOC deferred jurisdiction to the FEPC. On March 16, 1976, Saulsbury then filed a formal verified complaint with the FEPC. On March 25, 1976, the FEPC indicated to the EEOC that it would process the charge. On April 26, 1976, the FEPC waived jurisdiction at Saulsbury's attorney's request. The EEOC assumed jurisdiction on May 3, 1976, and filed the charge. On May 6, 1976, Saulsbury's counsel requested a right-to-sue notice, and the EEOC issued the requested notice on May 20, 1976. On June 4, 1976, the defendant signed the receipt showing notification of the charge. Saulsbury then filed suit on June 11, 1976.
 
 
 14
 Wismer & Becker moved for summary judgment on two grounds. First, it asserted that the charge was untimely because Saulsbury had failed to file any charge of discrimination within 180 days of the alleged act of discrimination. Second, it contended that suit was untimely because it had been filed only 38 days after the EEOC had assumed jurisdiction of the charge.
 
 
 15
 The district court granted the defendant's motion after finding that no FEPC complaint had been filed, although the documents noted above had been sent and received. The court held that:
 
 
 16
 A 'complaint of employment discrimination' under the State of California Fair Employment Practice Commission (FEPC) must be in writing, signed and 'verified' (i. e., sworn or notarized), and filed with the FEPC, and an informal contact or pre-complaint form filed by a complaining individual is not sufficient to constitute an FEPC complaint. California Labor Code § 1422; 8 Cal.Administrative Code § 302(b); Bennett v. Borden, 56 Cal.App.3d 706, 128 Cal.Rptr. 627 (3d Dist. 1976).
 
 
 17
 The court further found that the "undisputed facts" showed that no complaint had been filed within 180 days of the date of the alleged discriminatory act, and that the court therefore had no jurisdiction.
 
 Next, the court held that
 
 18
 It is a jurisdictional prerequisite to a private civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., for a charging party to wait at least 180 days following the EEOC's assumption of jurisdiction over the EEOC charge before filing a complaint in federal court based on said EEOC charge."
 
 
 19
 Because Saulsbury did not wait 180 days, the court found that it lacked jurisdiction. Summary judgment was granted to the defendant. Saulsbury took this appeal.
 
 II.
 
 20
 TIMELINESS OF FILING DISCRIMINATION CHARGE WITH THE EEOC
 
 
 21
 The district court found because Saulsbury's contacts with the FEPC in mid-1975 did not constitute the filing of a complaint under state law, they had not initiated proceedings with the state agency for § 706(e) purposes and, therefore, that the time for filing with the EEOC was not extended from 180 to 300 days under § 706(e) of Title VII, 42 U.S.C. § 2000e-5(e).[1] Former California Labor Code § 1422, as it was in effect during the period in question, stated that a person wishing to file a complaint of an unlawful employment practice must file a verified complaint in writing with the FEPC within one year of the date of the alleged unlawful practice.[2]
 
 
 22
 The specific question we must address is whether the failure to file a verified complaint with the FEPC bars Saulsbury from claiming the benefits of the extended period for filing with the EEOC. We hold that her contacts sufficiently "initially instituted" proceedings with the state agency to extend the time from 180 to 300 days for filing with the EEOC.
 
 
 23
 The term "initially instituted" is not defined in § 2000e-5(e). Recently, however, the Supreme Court and other circuits have indicated that the institution of proceedings with state agencies need be neither formal nor effectual to trigger the extended filing periods under Title VII and the Age Discrimination in Employment Act (ADEA). The Supreme Court's decision in Oscar Mayer & Co. v. Evans, 441 U.S. 750, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979), made clear that once an ADEA complainant has timely filed his or her notice of intent to sue with the Secretary of Labor within 300 days of the violation, the requirement that state proceedings be "commenced" is satisfied by a filing with the state agency even if the filing was made after expiration of the state statute of limitation and would, therefore, not be acted upon the state agency. Thus, the Court concluded that "commencement" need not include actual investigation or action by the state agency. 99 S.Ct. at 2073-74.
 
 
 24
 In Silver v. Mohasco Corp., 602 F.2d 1083 (2d Cir. 1979), rev'd on other grounds, 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980), the Second Circuit addressed the issue of when state proceedings were commenced in a Title VII case where the plaintiff had written to the EEOC 291 days after discharge. The EEOC forwarded the letter to the state deferral agency on June 15, within 300 days of discharge, and upon request by the state agency, a formal complaint was filed with it on August 12, more than 300 days after discharge. The court found that for purposes of Title VII the state proceedings had commenced on June 15,
 
 
 25
 when Silver's letter was forwarded to NYSDHR (state agency) by the EEOC. That a state law may require formal filing becomes irrelevant to a determination of when the state proceeding "commences" for purposes of the federal statute. This conclusion is compelled by the Supreme Court's recent decision in Oscar Mayer & Co. v. Evans, 441 U.S. 750, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979), that a state proceeding can be "commenced" for purposes of § 14(b) of the Age Discrimination in Employment Act, 29 U.S.C. § 633(b), even after the state statute of limitations has run.
 
 
 26
 602 F.2d at 1087 n.10.[3] Thus, the Silver court found that compliance with formal filing requirements set forth by state law will not be determinative of federal rights.
 
 
 27
 In Love v. Pullman, 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972), where the EEOC had orally referred a complaint to the state agency, the Supreme Court noted that:
 
 
 28
 Nothing in the Act suggests that state proceedings may not be initiated by the EEOC acting on behalf of the complainant himself, nor is there any requirement that the complaint to the state agency be made in writing rather than by oral referral.
 
 
 29
 404 U.S. at 525, 92 S.Ct. at 618. The Supreme Court did not discuss the underlying state procedures which may have permitted oral filings as a matter of state law; but, nonetheless, it used broad language in stating that a written complaint with a state agency is not a prerequisite for purposes of the Act.
 
 
 30
 In interpreting the Act, we have previously stated that:
 
 
 31
 The Equal Employment Act is an intricate statute hedged about with definitional, substantive, and procedural limitations, restrictions, and requirements. The Supreme Court has decreed in Love v. Pullman ... that these provisions are not to be interpreted too literally or too technically.
 
 
 32
 EEOC v. Wah Chang Albany Corp., 499 F.2d 187, 189 (9th Cir. 1974). Where the statute is ambiguous, disputes have almost unanimously been resolved in favor of complainants. Davis v. Valley Distributing Co., 522 F.2d 827, 832 (9th Cir. 1975), cert. denied, 429 U.S. 1090, 97 S.Ct. 1099, 51 L.Ed.2d 535 (1977).
 
 
 33
 The purpose of this section of the Act is not to ensure that state agencies take action, but to give "respectful but modest deference to a state that has evidenced interest." Pacific Maritime Association v. Quinn, 465 F.2d 108, 110 (9th Cir. 1972). Thus, when the state agency declines, for whatever reason, to pursue a complaint made to it, the failure of the state to follow through will not bar the initiation of a federal action so long as the state has had some opportunity to act on the complaint. Id.
 
 
 34
 Here, Saulsbury's contacts with the FEPC in mid-1975 fulfilled the purpose of the Act. The state agency was given an opportunity to act on her claim, but declined. Considering the liberal interpretation of Title VII and the agency's failure to notify her that no further action would be taken,[4] we find that Saulsbury's good faith efforts to commence proceedings sufficiently "initially instituted" proceedings with the FEPC to extend the time for filing with the EEOC to 300 days.
 
 
 35
 Finally, common sense indicates that one purpose of having an extended 300 day filing period when a state agency is involved is to allow extra time for the vagaries of a second administrative process. If we accept appellee's contention that formal filing with the state agency is required to trigger the extension from 180 to 300 days, then we would create anomalous results where the state agency's initial investigation concludes that a complaint cannot be filed with it and that investigation takes longer than 180 days. Clearly, initially instituting proceedings with the state agency means something less than a formal filing, especially where, as here, the state agency has procedures for acting on complaints prior to the filing of the formal complaint.[5]
 
 III.
 TIMELINESS OF THE COMPLAINT IN DISTRICT COURT
 
 36
 The district court held, an an alternative ground for summary judgment, that the complaint was not timely filed because it was filed less than 180 days after the EEOC had assumed jurisdiction, although Saulsbury already had received the right-tosue letter. After the district court's decision in the instant case, in Bryant v. California Brewers Association, 585 F.2d 421 (9th Cir. 1978), vacated and remanded on other grounds, 444 U.S. 598, 100 S.Ct. 814, 63 L.Ed.2d 55 (1980), where the suit was filed 168 days after the filing of the charge, we held:
 
 
 37
 Section 2000e-5(f)(1) simply requires the EEOC to issue a notice of right-to-sue if it has failed to file suit or arrange a conciliation agreement within 180 days. Nowhere does the statute prohibit the EEOC from issuing such notice before the expiration of the 180-day period.
 
 
 38
 Id. at 425. Noting the backlog of cases in the EEOC, we stated that "it would be a travesty to require the EEOC and Bryant to mark time until 180 days were counted off." Whether the EEOC has actually attempted to conciliate or investigate the case is irrelevant. This part of the Bryant case was not before the Supreme Court. Its reasoning remains persuasive, and we follow that reasoning today. Under it, the district court's ruling was erroneous.
 
 IV.
 CONCLUSION
 
 39
 In conclusion, we hold that Saulsbury did initially institute proceedings with the FEPC within the 180-day period. In addition, a complainant need not wait 180 days following the EEOC's assumption of jurisdiction before filing an action in the district court if the EEOC has issued a "right to sue" letter.
 
 
 40
 Accordingly, the judgment of the district court is REVERSED and the case remanded for further proceedings.
 
 
 
 *
 Honorable William J. Jameson, United States District Judge for the District of Montana, sitting by designation
 
 
 [1]
 Section 706(e) reads:
 A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge ... shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice ... such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the commission with the State or local agency.
 42 U.S.C. § 2000e-5(e) (emphasis added) If Saulsbury did "initially institute" proceedings in mid-1975, then the extended period would be 300 days, because she was not notified that the 1975 FEPC proceedings had terminated.
 
 
 [2]
 In dismissing Saulsbury's complaint, the district court also relied on Bennett v. Borden, 56 Cal.App.3d 706, 128 Cal.Rptr. 627 (1976), where the plaintiff discussed an alleged unlawful practice with an FEPC counselor but never submitted anything in writing or requested the FEPC to follow up on the charge. Bennett is distinguishable. In Bennett the issue was exhaustion of administrative remedies under state law; and no federal law claim was involved. The court held that the plaintiff had failed to exhaust administrative remedies, where no verified complaint had been filed and plaintiff's only contact with the FEPC had been an interview. Moreover, Saulsbury, in contrast to Bennett, wrote to the FEPC in May asserting that she had been discharged on account of her sex, and then wrote again two months later to determine the status of her case. In addition, Saulsbury complied with all requests for information made by the FEPC and in her communications with the agency consistently expressed a desire that her complaint be pursued
 
 
 [3]
 This aspect of Chief Judge Kaufman's opinion was not challenged and was not among the questions presented to or ruled on by the Supreme Court
 
 
 [4]
 While the pre-complaint form contained a statement that there was no guarantee that the information supplied would form the basis for a formal complaint, Connelly's cover letter indicated that the pre-complaint form would assist the agency in preparing a complaint for Saulsbury's signature, and that upon its return, the agency would be able to proceed. Saulsbury returned the completed form but was never notified that the agency did not intend to continue with its investigation
 It was not unreasonable for Saulsbury, a layperson, to rely on the FEPC's representations that it would take further action. Cf. White v. Dallas Independent School District, 581 F.2d 556 (5th Cir. 1978) (en banc) (misinformation by EEOC relied upon by the claimant who then failed to file with state agency will not preclude claimant's federal action); Ferguson v. Kroger Co., 545 F.2d 1034 (6th Cir. 1976) (administrative delay by EEOC in filing claim with state agency does not defeat claimant's right to a federal action).
 If the FEPC had notified Saulsbury promptly when it determined it was not going to proceed with her charge, she would have been able to go to the EEOC within the 180 day period. Thus, under the equitable principles applied in considering EEOC actions, Saulsbury should not be barred from proceeding where the state agency failed to follow through with its investigation and failed to notify her that its proceedings had terminated and that it could afford no relief. To hold otherwise would imply that complainants routinely must file contemporaneously with both the state agency and the EEOC in order to preserve their claim.
 
 
 [5]
 In 42 U.S.C. § 2000e-5(c), Congress expressly provided that, when states have filing requirements other and more difficult than a written and signed statement of the facts, "commencement" of state or local proceedings for § 2000e-5(c) purposes will be by federal law, not state requirements. See also Love v. Pullman, 404 U.S. at 526 n.4, 92 S.Ct. at 618 n.4 (1972). Similarly, for "initially instituting" state and local proceedings under § 2000e-5(e), state requirements are not determinative