Apolonio A. PASTRANA,
Plaintiff-Appellant,

v.

FEDERAL MOGUL CORPORATION,
Defendant-Appellee.

No. 81–1457.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 26, 1982.
Decided July 21, 1982.

Roy D. Simon, Jr., Chicago, Ill., for plaintiff-appellant.

Maryann C. Hayes, Kirkland & Ellis, Chicago, Ill., for defendant-appellee.

Before STEWART, Associate Justice,* PELL and SPRECHER,** Circuit Judges.

PELL, Circuit Judge.

Appellant Apolonio A. Pastrana appeals from the district court's finding that his national origin discrimination charge was not timely under sections 706(c) and (e) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–5(c) and (e) (1976). The correctness of the district judge's determination turns on whether the extended 300-day time limitation provided by section 706(e), *id.* § 2000e–5(e), was available to Pastrana by virtue of his having "initially instituted proceedings with a state or local agency with authority to grant or seek relief," *id.,* from the defendant's alleged national origin discrimination.

## I. FACTS

Appellant Apolonio Pastrana, a Filipino, applied for a job as In-Process Inspector with Federal Mogul Corporation (Federal Mogul or Company) on September 26, 1979. Following a Company physical examination, which disclosed that Pastrana was overweight, suffered from psoriasis and from a visual problem, his employment application was deferred. Pastrana subsequently presented notes from his personal physicians indicating that neither the psoriasis nor the visual problem would interfere with his employment.[1] Despite these releases, Federal Mogul declined to hire Pastrana on either October 22 or October 23, 1979.[2]

On October 1, 1979, before Pastrana had presented his optometrist's statement to Federal Mogul, Pastrana filled out a Complainant Information Sheet (CIS) at the offices of the Illinois Fair Employment Practices Commission (Illinois FEPC). In response to a question asking Pastrana to

---

* Associate Justice Potter Stewart, United States Supreme Court, Retired, is sitting by designation.

** Circuit Judge Robert A. Sprecher was a member of the original panel and as such read the briefs before oral argument and participated in the post-hearing conference. Because of his death on May 15, 1982, he did not have an opportunity to examine or approve the court's opinion in this case.

1. Pastrana claims that he obtained a release regarding his psoriasis on September 28, 1979, and "immediately" took it to Federal Mogul. The defendant correctly states that nothing in the record supports this assertion. It is undisputed that Pastrana did not obtain a note from his optometrist until October 22, 1979.

2. It is unclear whether Pastrana returned to Federal Mogul's personnel office on October 22 or October 23, 1979. The Illinois FEPC Investigation Report states that Pastrana returned "on or about 10/22/79." The appellant's FEPC charge of physical handicap discrimination states that he was denied employment on October 23, 1979. In his brief, Pastrana states that he returned to Federal Mogul on October 22, 1979.

In their briefs, the parties have devoted considerable attention to the exact circumstances surrounding the Company's refusal to hire Pastrana. In particular, Federal Mogul emphasizes the finding by the Illinois Human Rights Commission that, "Complainant was not hired because he exhibited indignant and hostile behavior towards two of Respondent's employees when he returned with his doctor's statement." Although these facts are pertinent to whether Pastrana was a victim of discrimination, we need not recite them at length in order to resolve the narrow question presented by this appeal.

check all categories applicable to his discrimination charge, he checked those specifying physical handicap, national origin, race, and color. The form Pastrana completed directed his attention to the fact that, "[t]he law requires that a charge be filed within *180 days* from the date of the alleged discrimination." (Emphasis in original) Pastrana signed the CIS but his signature was not notarized. The Illinois FEPC took no action at that time regarding Pastrana's complaint.

On October 24, 1979, Pastrana returned to the Illinois FEPC and was interviewed by an intake officer. Although Pastrana's CIS form was in his file, the intake officer drafted a formal charge alleging only physical handicap discrimination. Pastrana signed and swore to the charge before a notary public.

On April 14, 1980, the Illinois FEPC issued an Investigation Report concluding that there was a lack of substantial evidence that Pastrana was denied employment because of his physical condition. On April 24, the Illinois FEPC notified Pastrana that his physical handicap discrimination charge should be dismissed for lack of substantial evidence. That same day, Pastrana filed a Request for Reconsideration. In addition to requesting that his physical handicap discrimination charge be reconsidered and reviewed by the full Commission, Pastrana wrote at the bottom of the last handwritten page that he believed he was not hired because of his "national origin as a Philippine." The April 24, 1980, filing date of the Request for Reconsideration was more than 180 days after the alleged discrimination had occurred. The Illinois agency did not remand Pastrana's case for additional fact-finding relating to the national origin discrimination charge. The state agency denied the Request for Reconsideration without specifying its reasons.[3]

On May 21, 1980, Pastrana filled out an EEOC Intake Questionnaire at the Chicago office of the Equal Employment Opportunity Commission (EEOC). He alleged that he had been discriminated against because of both his physical handicap and his national origin. On July 11, 1980, 288 days after the alleged discrimination occurred, the EEOC docketed Pastrana's charge of national origin discrimination. On that same day, the EEOC sent a Charge Transmittal form to the Illinois FEPC. This form gave the FEPC two options: (1) to process the charge and ask the EEOC to refrain from processing it until the FEPC reached a final disposition, or (2) to decide not to process the charge at all. The FEPC declined to process Pastrana's charge. This terminated state proceedings as to the national origin discrimination claim. On July 14, 1980, Pastrana signed a formal EEOC charge alleging national origin discrimination. Another Charge Transmittal form was sent to the Illinois FEPC and that agency again declined to process the charge.

On October 10, 1980, the EEOC issued its determination on the merits, stating that "[e]xamination of the evidence indicates that there is not reasonable cause to believe that this allegation is true." The EEOC advised Pastrana of his right to sue in federal court. On October 23, 1980, Pastrana filed his Title VII action *pro se* in the Northern District of Illinois.

On December 8, 1980, Federal Mogul moved to dismiss the complaint for lack of subject matter jurisdiction, claiming that Pastrana had failed to comply with the 180-day time limitation prescribed by section 706(e) of Title VII, 42 U.S.C. § 2000e–5(e) (1976). The district judge granted this motion on January 27, 1981. The order granted Pastrana leave to move for reinstatement if he could show that, as a consequence of his physical handicap discrimination claim filed with the Illinois FEPC, his national origin claim also received consideration by that entity. Pastrana subsequently presented the Request for Reconsidera-

---

3. On August 20, 1980, the newly created Illinois Human Rights Commission issued an order dismissing Pastrana's physical handicap discrimination charge for lack of substantial evidence.

The order made no reference to Pastrana's claim that he was a victim of national origin discrimination.

tion forms and the two Charge Transmittal forms to the district court. On March 11, 1981, Judge Bua issued a brief minute order refusing to reinstate Pastrana's claim and dismissing it with prejudice.

## II. DISCUSSION

■ Section 706(e) of Title VII, 42 U.S.C. § 2000e–5(e) (1976), provides:

A charge under [Title VII] shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred ... except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice ... such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier ....

It is undisputed that Pastrana's EEOC claim alleging national origin discrimination was filed more than 180 days, but less than 300 days, after Federal Mogul allegedly discriminated against him because he was a Filipino. The appellant contends that the 300-day extended time limit applies to his claim because he "initially instituted" state proceedings by filling out the Illinois FEPC's CIS and/or by filing his Request for Reconsideration. Alternatively, Pastrana claims that the EEOC instituted state proceedings on his behalf by deferring his claim pursuant to recognized deferral procedures.[4]

If Pastrana's completion of the CIS form, on which he clearly indicated that he believed himself to be a victim of national origin discrimination, fulfills the section 706(e) requirement of "institut[ing] proceedings with a State or local agency with authority to grant or seek relief from such practice," 42 U.S.C. § 2000e–5(e) (1976), his Title VII suit was timely filed. We do not read section 706(e) to require that the State agency actively review or consider the claimant's charge,[5] see Mohasco Corp. v. Silver, 447 U.S. 807, 810, 100 S.Ct. 2486, 2489, 65 L.Ed.2d 532 (1980); Oscar Mayer & Co. v. Evans, 441 U.S. 750, 761, 99 S.Ct. 2066, 2074, 60 L.Ed.2d 609 (1979); Pacific Maritime Association v. Quinn, 465 F.2d 108, 110–11 (9th Cir. 1972), nor do we understand Federal Mogul to argue that such active consideration is a necessity. The argument made by the appellee in support of the district court's dismissal is, rather, that a claimant must comply with state filing requirements or else the state agency is devoid of "authority to grant or seek relief," 42 U.S.C. § 2000e–5(e) (1976), from the allegedly discriminatory practice.[6]

A similar argument was posed by the defendant company in Saulsbury v. Wismer & Becker, Inc., 644 F.2d 1251 (9th Cir. 1980) (amended 1981). In that case, Saulsbury had written the state FEPC on two occasions alleging that she was a victim of sex discrimination. In response to her second inquiry, the FEPC mailed her a pre-complaint form. This form indicated on its face that completing the form was not synonymous with filing a formal complaint. Saulsbury returned the form but the FEPC failed to take any action on it and failed to

---

4. Pastrana does not argue, nor could he, that the 300-day extended limit is available to him because he filed a *physical handicap* discrimination charge with the Illinois FEPC. Physical handicap discrimination is not declared unlawful under Title VII and the 300-day limit is available only to a claimant whose charge filed with a State agency pertains to discrimination unlawful under Title VII.

5. Although we do not necessarily read Judge Bua's order as holding that such active consideration is required, the appellant has construed

the dismissal order as being premised on such a misreading of the applicable law.

6. The appellee further contends that even if the CIS were adequate to institute proceedings within the meaning of section 706(e), it cannot be so deemed in this case because Pastrana subsequently elected, at the time he signed the formal FEPC charge, to proceed only on his allegation of physical handicap discrimination. This argument is discussed *infra*.

inform her that they did not intend to do so. By the time Saulsbury obtained an attorney and filed a formal charge with the EEOC, the state 180-day limit had expired. The Ninth Circuit stated:

It was not unreasonable for Saulsbury, a layperson, to rely on the FEPC's representations that it would take further action.... If the FEPC had notified Saulsbury promptly when it determined it was not going to proceed with her charge, she would have been able to go to the EEOC within the 180 day period. Thus, under the equitable principles applied in considering EEOC actions, Saulsbury should not be barred from proceeding where the state agency failed to follow through with its investigation and failed to notify her that its proceedings had terminated and that it could afford no relief.

644 F.2d at 1256 n.4. *Saulsbury* stands for the proposition that failure to satisfy state filing requirements will not necessarily bar a federal Title VII suit if the equities favor the claimant.

The *Saulsbury* court relied on two earlier decisions in reaching its holding: *Love v. Pullman Co.*, 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972), and *Silver v. Mohasco Corp.*, 602 F.2d 1083 (2d Cir. 1979), *rev'd on other grounds*, 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980). In *Love*, the Supreme Court held that state proceedings could be initiated by the EEOC acting orally on behalf of a claimant. The Court's opinion did not discuss whether such an "oral filing" was consistent with state procedural law. The broad language of that opinion suggests, however, that state requirements cannot be interpreted too literally if the result is to deny a federal claimant a hearing on the merits. In *Mohasco*, the Second Circuit held that state proceedings were commenced for the purposes of section 706(e) when Silver's letter to the EEOC was forwarded to the New York state agency on June 15th despite the fact that no formal complaint was filed with the state agency until August 12th. We agree with the Ninth Circuit's conclusion that this aspect of *Mohasco*, which was not among the questions presented to or ruled on by the Supreme Court, stands for the proposition that "compliance with formal filing requirements set forth by state law will not be determinative of federal rights." *Saulsbury*, 644 F.2d at 1255.

We believe that the equitable rationale relied on by the Ninth Circuit in *Saulsbury* is consistent with both the Supreme Court resolution in *Love* and the Second Circuit disposition in *Mohasco*. Our attention has not been called to a single court of appeals case holding that a failure to conform to the precise manner of filing mandated by state law will preclude a federal claimant from a hearing on the merits.[7] We turn

---

7. The cases cited by the appellee in support of its position that a claimant must comply with state procedures for instituting a discrimination charge are not directly on point. In *Moore v. Sunbeam*, 459 F.2d 811 (7th Cir. 1972), the plaintiff-appellant did not allege that he had ever filed a complaint with the Illinois FEPC. *Id.* at 822 & n.28. The court's statement that an extended filing limit was available only "to one who *has followed* state procedures," *id.* at 824 (emphasis in original), referred to the different time limit applicable to claimants who file initially with a state agency rather than with the EEOC. The issue whether a FEPC filing must conform to state procedural law in order to warrant the extended limitation period was not before the court.

*Dubois v. Packard Bell Corp.*, 470 F.2d 973 (10th Cir. 1972), the other court of appeals case relied on by the appellee, is similarly inapposite. Dubois had failed to comply with the state's 90-day filing limit. Like *Dubois*, a num-

ber of district court cases cited by Federal Mogul involve claimants who failed to initiate state proceedings within the prescribed state time period. *See Mobley v. Acme Markets, Inc.*, 473 F.Supp. 851, 857 (D.Md.1979); *Mills v. National Distillers Prods. Co.*, 435 F.Supp. 72, 75 (S.D.Ohio 1977). Whether one must comply with a state limitation period is a different issue from what form a timely state filing must take in order to comply with the "instituted proceedings" language of section 706(e), 42 U.S.C. § 2000e-5(e) (1976).

In *Lopez v. Sears, Roebuck & Co.*, 493 F.Supp. 801 (D.Md.1980), there was no possibility of the state proceeding in response to the claimant's charge because it was precluded from doing so by a work-sharing agreement with the EEOC. The court's conclusion that state proceedings are not "initially instituted" where the charge is submitted for "informational purposes only," *id.* at 805, is not relevant

therefore to a consideration of the equities presented by the case at bar.

■ First, the CIS form contained virtually all of the information required of a formal FEPC charge under the applicable regulations. The principal difference between the CIS and the formal charge (other than that the latter made no reference to national origin discrimination) was that Pastrana signed the formal charge under oath. Second, the "note" on the CIS form warning Pastrana of the 180-day limitation period did not necessarily put him on notice that filing a charge required more than completion of the CIS. In comparison, the pre-complaint form completed by Saulsbury was considerably more explicit than that completed by Pastrana. Third, Pastrana was not represented by counsel at the time he completed either the CIS or signed the formal charge at the offices of the Illinois FEPC. Although a lay person might be charged with understanding the obligation of filing his claim within a specified period, see Mohasco Corp. v. Silver, 447 U.S. 807, 825, 100 S.Ct. 2486, 2496, 65 L.Ed.2d 532 (1980), we are unwilling to conclude that a layman would necessarily appreciate the procedural steps to be followed in filing a complaint. We conclude that, absent some indication Pastrana either directed the FEPC to pursue only his physical handicap charge or that he was at least aware, within the 180-day state limitation period, that his national origin discrimination charge was not embodied in the formal charge he subsequently signed, Pastrana must be deemed to have "instituted state proceedings" when he completed the CIS.

■ Federal Mogul argues that, by signing the formal complaint alleging only physical handicap discrimination, Pastrana "personally instructed the Illinois FEPC to proceed only [on that charge]," an instruction which the state agency followed "to the letter." In essence, the appellee argues that Pastrana waived his national origin discrimination claim. It is well established that waiver is the intentional relinquishment of a known right. Larkins v. NLRB, 596 F.2d 240, 247 (7th Cir. 1979); Shearson Hayden Stone, Inc. v. Leach, 583 F.2d 367, 370 (7th Cir. 1978). If Pastrana had instructed the agency to abandon the national origin discrimination claim, the appellee's waiver argument would prevail. We find no evidence in the record, however, to compel the conclusion that Pastrana knowingly relinquished this claim. Pastrana might have believed that investigation of his physical handicap claim would reveal that justification for his not being hired to be a pretext for national origin discrimination by Federal Mogul. The record of this case simply presents no evidence from which one can determine whether the failure to include Pastrana's national origin discrimination claim in his notarized charge should be attributed to the claimant or to the Illinois FEPC.[8] There is no evidence in the record from which we can conclude with certainty that Pastrana realized that his national origin discrimination claim was not being considered by the Illinois FEPC before April 24, 1980, when the agency notified Pastrana that his physical handicap discrimination charge should be dismissed. By the time Pastrana received this notification, more

to a determination whether completing the CIS form of an agency that *is* empowered to process the claim is sufficient to entitle a claimant to the extended 300-day limit.

Finally, two cases cited by Federal Mogul state in dicta that a claimant must file a charge in "proper form." *See Gunn v. Dow Chemical Co.*, 522 F.Supp. 1172 (S.D.Ind.1981); *De Gideo v. Sperry-Univac Co.*, 415 F.Supp. 227, 230 n.6 (E.D.Pa.1976) (mem.). In both these cases the claimant had not instituted timely proceedings with either a state agency or within the 180-day Title VII limit. Further, neither case involves a claimant who *attempted*, like Pastrana, to insti-

tute state proceedings, within the statutory time limit, on his discrimination charge.

**8.** A recent Supreme Court case, *Logan v. Zimmerman Brush Co.*, —— U.S. ——, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982) (holding that failure of the Illinois FEPC to convene a fact-finding conference within the 120 days prescribed by state statute could not bar the complainant's claim consistent with due process), strongly suggests that Pastrana cannot be denied a hearing on his claim if the failure to specify his national origin discrimination claim in his formal charge were the fault of the Illinois FEPC.

than 180 days had passed since the alleged discrimination occurred. Because we find no clear evidence of Pastrana's intent to relinquish his national origin discrimination claim, we conclude that it was not waived.

## CONCLUSION

 The general rule is that " 'all doubts on jurisdictional points must be resolved in favor of plenary trial rather than dismissal at the pretrial stage,' " *Satz v. ITT Financial Corp.*, 619 F.2d 738, 742 (8th Cir. 1980) (citation omitted) (reversing dismissal of Title VII suit). The section 706(e) requirement that proceedings must be " 'initially instituted,' " 42 U.S.C. § 2000e–5(e) (1976), before a state agency in order for the extended 300-day time limitation to apply does not clearly preclude a federal plaintiff who attempted to initiate such state proceedings in timely fashion and arguably failed to comply, through no proven fault of his own, with state procedural law. We conclude that the equities present in this case require us to deem Pastrana's FEPC charge "initially instituted" when he completed the CIS form on October 1, 1979. This date is within the 180-day limit specified by state law. The Illinois FEPC therefore had "authority to grant or seek relief" and the extended 300-day limit for filing with the EEOC was available to Pastrana.

Because of our disposition of this case, we need not address the other arguments raised by Pastrana as to why he was entitled to the 300-day time limit.

The judgment of the district court dismissing Pastrana's suit is vacated and this case is remanded to the district court with instructions to grant Pastrana a hearing on the merits of his national origin discrimination claim.