**Robert J. STOECKLEIN, Plaintiff,**

v.

**ILLINOIS TOOL WORKS, INC., a Delaware corporation, Defendant.**

No. 83 C 6640.

United States District Court,
N.D. Illinois, E.D.

April 16, 1984.

**140**

Miriam F. Miquelon, Miquelon, Cotter & Daniel, Ltd., Chicago, Ill., for plaintiff.

Gordon B. Nash, Gardner, Carton & Douglas, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

This action arises out of defendant Illinois Tool Works' ("ITW") termination, or forced retirement, of plaintiff Robert W. Stoecklein ("Stoecklein"). Stoecklein alleges in Count I that ITW violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634, by demoting him and later terminating him because of his age. Included in the complaint are two state law claims over which Stoecklein asks this Court to exercise pendent jurisdiction. Count II is a tort claim for retaliatory discharge, based on the Illinois public policy against age discrimination embodied in the Illinois Human Rights Act ("IHRA"), Ill.Rev.Stat. ch. 68, § 1–101 *et seq.* Count III is a tort claim for intentional infliction of emotional distress. ITW has moved to dismiss all three counts of the complaint. For the following reasons, we deny ITW's motion as to Count I but grant it as to Counts II and III.

### Factual Background

The allegations of the complaint and the attached EEOC charge, which we must accept as true for purposes of a motion to dismiss, *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), establish the following facts.

Stoecklein, who was fifty-seven years old at the time of the alleged discrimination, was employed continuously by ITW for more than twenty-six years, from October 17, 1955 to December 31, 1981.[1] During that time, he performed his work in a competent and satisfactory manner and received promotions, merit salary increases and letters of commendation.

Prior to December of 1980, Stoecklein was Manager of the Power Tools Department. During that month, however, he was transferred to a different department and demoted to Product Manager. In December of 1981, his new position was eliminated, and he was terminated. Contrary to prior company practice and policy regarding the elimination of positions, ITW made

---

1. There is a dispute between ITW and Stoecklein as to the actual date of Stoecklein's termination, as well as discrepancies as to the date within Stoecklein's own complaint: the EEOC charge attached to the complaint indicates an earlier date than the complaint itself. In light of our disposition of the motion to dismiss, that discrepancy need not be resolved at this time.

no effort to relocate or transfer Stoecklein to another position within the company. Stoecklein further alleges that at the same time he was terminated, others were also forced to retire, ITW having established a pattern of involuntary retirement for many in his same age group.

The facts and occurrences leading to Stoecklein's termination are not entirely clear. Stoecklein was first informed, orally, in September that his position might be eliminated and then later that he would be terminated as of December 31, 1981, rather than transferred. During October, he was informed that others were to be terminated also, as of October 31, 1981. All these employees were in their fifties or early sixties. He was told on October 16 that he would have to leave with the others on October 31. In the end, Stoecklein apparently continued working at least until December 1, 1981, the date alleged in the EEOC charge, although in his complaint he gives a termination date of December 31, 1981.

Stoecklein alleges also that, to his knowledge and belief, ITW replaced him with younger workers to fill available positions within his qualifications, and that ITW refused to rehire him for any such positions. Finally, Stoecklein alleges that ITW's discriminatory conduct towards him was wilful within the meaning of the ADEA, 29 U.S.C. § 626(b), in that it was done in known violation of the ADEA and with motivation to engage in a pattern of discrimination against older employees.

On June 1, 1982, Stoecklein filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). On May 4, 1983, the EEOC informed Stoecklein it would not proceed further with his case. He filed the present action on September 21, 1983.

### Count I

Count I of Stoecklein's complaint alleges that ITW has discriminated against him because of his age in violation of the Age Discrimination in Employment Act. ITW argues that Stoecklein's ADEA claim should be dismissed because his charge was not filed with the EEOC within 180 days of the alleged discriminatory act, which it claims is required by the ADEA, 29 U.S.C. § 626(d)(1). ITW asserts that Stoecklein knew at least by November 11, 1981, (and arguably by October 16) that his position was to be eliminated, since on that date and prior to that date, he executed documents evidencing his intent to retire in lieu of discharge. Those documents are attached to ITW's motion to dismiss. In addition, ITW cites Stoecklein's own EEOC charge attached to his complaint, which gives December 1, 1981, as Stoecklein's final termination date. Using either of these dates, the EEOC charge was filed more than 180 days after Stoecklein had knowledge of the alleged discrimination.

Stoecklein answers by asserting (1) that December 31, 1981, is the appropriate date, but that in any case the exact date of his termination is an issue of fact which should not be resolved on a motion to dismiss; (2) that ITW has waived its right to object to the timeliness of the EEOC charge because it failed to raise that issue during administrative proceedings; and (3) that in any case Stoecklein is entitled to a 300-day filing period under the ADEA, 29 U.S.C. § 626(d)(2). Because we conclude that the 300-day filing period is applicable in this case and that therefore the EEOC charge was timely filed using any of the possible trigger dates, we need not reach Stoecklein's first two contentions.

▮ The ADEA, 29 U.S.C. § 626(d), establishes two different limitation periods for the filing of charges with the EEOC, 180 days as a general rule, but 300 days in so-called deferral states which have their own enforcement agencies to combat age discrimination.[2] Section 626(d) reads as follows:

**2.** This system is patterned after the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(e).

No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Commission. Such a charge shall be filed—

(1) within 180 days after the alleged unlawful practice occurred; or

(2) in a case to which section 633(b) of this title applies, within 300 days after the alleged unlawful practice occurred, or within 30 days after receipt by the individual of notice of termination of proceedings under State law, whichever is earlier.

Upon receiving such a charge, the Commission shall promptly notify all persons named in such charge as prospective defendants in the action and shall promptly seek to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion.

Section 633(b) of the ADEA describes deferral states to which the 300-day limitation is applicable and establishes further requirements for commencement of suit in such deferral states:

(b) In the case of an alleged unlawful practice occurring in a State which has a law prohibiting discrimination in employment because of age and establishing or authorizing a State authority to grant or seek relief from such discriminatory practice, no suit may be brought under section 626 of this title before the expiration of sixty days after proceedings have been commenced under the State law, unless such proceedings have been earlier terminated: *Provided*, That such sixty-day period shall be extended to one hundred and twenty days during the first year after the effective date of such State law. If any requirement for the commencement of such proceedings is imposed by a State authority other than a requirement of the filing of a written and signed statement of the facts upon which the proceeding is based, the proceeding shall be deemed to have been commenced for the purposes of this subsection at the time such statement is sent by registered mail to the appropriate State authority.

ITW argues that, although Illinois is a deferral state because the IHRA prohibits age discrimination and establishes an agency to enforce the Act, in order to take advantage of the 300-day limitation period Stoecklein must first file a timely charge with the Illinois Department of Human Rights ("IDHR"), which is the agency charged with enforcement of the IHRA. Since Stoecklein has failed to allege that he has filed *any* charge with the IDHR, ITW asserts that the 180-day period applies.

In support of its contention, ITW cites three cases from the Northern District of Illinois holding that a plaintiff must show that he has filed a charge with the IDHR within Illinois' 180-day filing period in order to take advantage of the 300-day filing period of § 626(d)(2). *O'Young v. Hobart Corp.*, 579 F.Supp. 418 (N.D.Ill.1983); *McGuire v. Peter Eckrich & Sons, Inc.*, 32 F.E.P. Cases 933 (N.D.Ill.1983); and *Lowell v. Glidden-Durkee, Div. of SCM Corp.*, 529 F.Supp. 17 (N.D.Ill.1981). *Contra, Curto v. Sears Roebuck & Co.*, 552 F.Supp. 891 (N.D.Ill.1982). In reaching that conclusion, the decisions cited by ITW rely on the Supreme Court's statement of the congressional purpose behind creation of the 300-day filing period, "to give state agencies an opportunity to redress the evil at which the federal legislation was aimed, and to avoid federal intervention unless its need was demonstrated." *Lowell*, 529 F.Supp. at 22 [quoting *Mohasco Corp. v. Silver*, 447 U.S. 807, 821, 100 S.Ct. 2486, 2495, 65 L.Ed.2d 532 (1980)]. The district courts reason that allowing a plaintiff to file an untimely charge with the IDHR and still take advantage of the 300-day filing period undermines the very purpose for which the extended filing period was created, since the state agency no longer has the opportunity to consider and resolve the charge of employment discrimination. Complainants who wish could simply bypass state proceedings entirely, in contravention of the congressional policy behind the extended filing period, by waiting until the state limitation period has passed. *O'Young,*

579 F.Supp. at 420–421; *McGuire,* 32 F.E.P. Cases at 935; *Lowell,* 529 F.Supp. at 25. In addition, the courts considered an interpretation of the statute allowing all complainants in deferral states 300 days to file a charge unfair to complainants who happen to reside in non-deferral states, since the latter must initiate EEOC charges within 180 days. *O'Young,* 579 F.Supp. at 421; *Lowell,* 529 F.Supp. at 25.

In our view, the conclusions of *O'Young, McGuire* and *Lowell* do not square with recent Supreme Court decisions interpreting the filing provisions of the ADEA and of Title VII. In *Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979), the Court held that although § 14(b) of the ADEA, 29 U.S.C. § 633(b), does require that state proceedings be "commenced" 60 days prior to bringing suit in federal court, such commencement need not be within the limitation period mandated by state law: "[S]tate procedural defaults cannot foreclose federal relief and ... state limitations periods cannot govern the efficacy of the federal remedy." *Oscar Mayer,* 441 U.S. at 762, 99 S.Ct. at 2074. In addition, the Court held that even though Evans had failed to file a state charge at all, the federal suit need not be dismissed but could be held in abeyance for 60 days to allow the charge to be filed and the state to act, as required by § 14(b) of the ADEA. *Oscar Mayer,* 441 U.S. at 764–65, 99 S.Ct. at 2076.

In *Oscar Mayer,* however, the Supreme Court did not address the issue of the plaintiff's entitlement to the 300-day extended filing period for his charge with the Secretary of Labor,[3] since Evans had filed his federal charge within 180 days. Interpretation of the extended filing period took place in *Mohasco Corp. v. Silver,* 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980). In *Mohasco,* the Court was examining the filing provisions of Title VII, which unlike the ADEA require that a complainant file a charge with the state agency 60 days prior to *filing a charge* with the EEOC, rather than 60 days prior to filing suit. 42 U.S.C. § 2000e–5(e).[4] The Court interpreted these provisions to require only that a complainant file state charges (or, as was actually the case in *Mohasco,* that the EEOC refer a charge filed with it to the state agency) within 240 days of the alleged discriminatory act to preserve his federal rights.[5] *Mohasco,* 447 U.S. at 814 n. 16, 817, 100 S.Ct. at 2491 n. 16, 2493. The Court refused to read a requirement of a timely state filing into the statutory scheme of Title VII: "[W]e do not believe that a court should read in a time limitation provision that Congress has not seen fit to include ... at least when dealing with 'a statutory scheme in which laymen, unassisted by trained lawyers initiate the process.' " *Mohasco,* 447 U.S. at 816 n. 19, 100 S.Ct. at 2492 n. 19 [quoting *Love v. Pullman Co.,* 404 U.S. 522, 527, 92 S.Ct. 616, 619, 30 L.Ed.2d 679 (1972) ].

It is true, as the *Lowell* court points out, that the state filing period in *Mohasco* was 365 days, so that the state filing on the 291st day was in any case timely. Nevertheless, the Court in footnotes 16 and 19 explicitly disapproved of cases holding that the filing with either the state agency or the EEOC must under all circumstances be within 180 days of the discriminatory act. *Mohasco,* 447 U.S. at 814 n. 16, 816 n. 19, 100 S.Ct. at 2491 n. 16, 2492 n. 19 [criticising *Olson v. Rembrandt Printing Co.,* 511

---

**3.** Prior to 1979, complaints under the ADEA were handled by the Department of Labor. Reorganization Plan No. 1 of 1978, 3 C.F.R. 321 (1979) transferred this function to the EEOC.

**4.** If the state agency terminates its proceedings before the end of the 60-day waiting period, the complainant may immediately file an EEOC charge. 42 U.S.C. § 2000e–5(e).

**5.** The 240-day rather than 300-day limit was necessary to allow for the statutory waiting period of 60 days before a "filing" could take place with the EEOC, assuming state proceedings are not earlier terminated. The ADEA does not contain a 60-day waiting period before EEOC charges can be filed. It only requires that the complainant wait 60 days after commencing state proceedings before *filing suit.* "ADEA grievants may file with the State before or after they file with the Secretary of Labor." *Oscar Mayer,* 441 U.S. at 756 n. 4, 99 S.Ct. at 2072 n. 4.

F.2d 1228 (8th Cir.1975) and *Ciccone v. Textron, Inc.*, 616 F.2d 1216 (1st Cir. 1980)]. In addition, the Court has since summarily vacated and remanded, in light of *Mohasco*, two circuit court decisions holding that a state charge must be timely filed, or if the state period is less than 180 days filed within 180 days, in order to permit a complainant to take advantage of the 300-day extended filing period. *See Ewald v. Great Atlantic & Pacific Tea Co.*, 620 F.2d 1183 (6th Cir.1980), *vacated*, 449 U.S. 914, 101 S.Ct. 311, 66 L.Ed.2d 143 (1980), *on remand*, 644 F.2d 884 (6th Cir. 1981); *Ciccone v. Textron, Inc.*, 616 F.2d 1216 (1st Cir.1980), *vacated*, 449 U.S. 914, 101 S.Ct. 311, 66 L.Ed.2d 143 (1980), *on remand*, 651 F.2d 1 (1st Cir.1981), *cert. denied*, 452 U.S. 917, 101 S.Ct. 3052, 69 L.Ed.2d 420 (1981).

Every circuit court to consider the question, including several which reached a different conclusion prior to *Mohasco*, concluded that under *Mohasco*, state proceedings need not be timely filed in order to trigger the 300-day extended filing period under either Title VII or the ADEA. *Rasimas v. Michigan Dept. of Mental Health*, 714 F.2d 614, 621–22 (6th Cir.1983); *Aronsen v. Crown Zellerbach*, 662 F.2d 584, 590–91 (9th Cir.1981), *cert. denied*, 459 U.S. 1200, 103 S.Ct. 1183, 75 L.Ed.2d 431 (1983); *Citicorp Person-To-Person Financial Corp. v. Brazell*, 658 F.2d 232, 234 (4th Cir.1981) (dicta); *Owens v. Ramsey Corp.*, 656 F.2d 340, 342 (8th Cir.1981) (dicta); *Goodman v. Heublein, Inc.*, 645 F.2d 127, 132 (2d Cir.1981); *Ciccone v. Textron, Inc.*, 651 F.2d 1, 2 (1st Cir.), *cert. denied*, 452 U.S. 917, 101 S.Ct. 3052, 69 L.Ed.2d 420 (1981); *Davis v. Calgon Corp.*, 627 F.2d

674, 676 (3d Cir.1980), *cert. denied*, 449 U.S. 1101, 101 S.Ct. 897, 66 L.Ed.2d 827 (1981).[6] In addition, *Curto v. Sears, Roebuck & Co.*, 552 F.Supp. 891, 895 (N.D.Ill. 1982), reaches this same conclusion after an extensive review of the relevant case law. On the basis of our interpretation of *Oscar Mayer* and *Mohasco*, and the overwhelming case law in support of that interpretation, we conclude that the ADEA contains no requirement that Stoecklein commence state proceedings within 180 days in order to take advantage of the 300-day extended filing period under the ADEA.

Although Stoecklein's charge with the EEOC must be considered timely, he has still apparently failed to comply with § 14(b) of the ADEA, which requires that he must have commenced state proceedings 60 days prior to bringing suit. The Supreme Court in *Oscar Mayer* read this as a mandatory provision, but it did not dismiss the plaintiff's complaint because he had failed to commence state proceedings. Instead, it simply ordered the case held in abeyance until the plaintiff complied with the state commencement requirement and 60-day deferral period. The same procedure has been followed by the Second Circuit in *Reinhard v. Fairfield Maxwell Ltd.*, 707 F.2d 697, 699 (2d Cir.1983), and suggested as appropriate in *Sharpe v. Philadelphia Housing Authority*, 693 F.2d 24, 26 n. 3 (3d Cir.1982). We conclude that this procedure should be followed in the present case and consequently stay the present proceedings until Stoecklein complies with the requirements of § 14(b) or until he demonstrates that he has already complied with them.[7]

---

**6.** The Seventh Circuit in *Boyd v. Madison County Mutual Ins. Co.*, 653 F.2d 1173 (7th Cir.1981), *cert. denied*, 454 U.S. 1146, 102 S.Ct. 1008, 71 L.Ed.2d 299 (1982), citing *Mohasco*, applied the 300-day filing period without discussing whether the state filing was timely, although under the facts of that case the state filing was timely. 653 F.2d at 1176. In *Pastrana v. Federal Mogul Corp.*, 683 F.2d 236 (7th Cir.1982), the court found that even if the plaintiff had failed to comply with "the precise manner of filing mandated by state law," his attempt to file a state charge was adequate for Title VII purposes.

Since that attempt was within the 180-day state limit, "[t]he Illinois [Fair Employment Practices Commission] had 'authority to grant or seek relief' and the extended 300-day limit for filing with the EEOC was available...." *Pastrana*, 683 F.2d at 240, 242. The court explicitly refused to address the plaintiff's other arguments as to why the 300-day time limit should apply. *Id.* at 242.

**7.** We note that under the Work Sharing Agreement in effect between the EEOC and the IDHR, charges filed in the EEOC are normally auto-

*Count II*

In Count II, Stoecklein alleges that he was discharged in retaliation for his refusal to accept a discriminatory demotion, in violation of the public policy of Illinois as embodied in the Illinois Human Rights Act. ITW argues that Count II should be dismissed because the Illinois legislature in enacting the IHRA pre-empted the area of civil rights violations in the employment setting, and that therefore Stoecklein must look to the IHRA for his remedy.

In examining a similar retaliatory discharge claim in *Brudnicki v. General Electric Co.*, 535 F.Supp. 84 (N.D.Ill.1982), this Court concluded that it should not imply an independent cause of action based on the public policy embodied in the IHRA. *Brudnicki*, 535 F.Supp. at 89. We see no reason in the present case to change that conclusion. Illinois courts have acknowledged the need to recognize the tort of retaliatory discharge when there is no other remedy available to vindicate the public policy involved. *Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 187, 23 Ill.Dec. 559, 563, 384 N.E.2d 353, 357 (1978). In this case, however, there is a remedy available in the IHRA to vindicate the public policy embodied in that Act. In fact, the remedies provided by the IHRA are exclusive: "Except as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act." IHRA, Ill.Rev.Stat. ch. 68, § 8–111(D). In light of the available statutory remedies, this Court will again refuse to imply an independent cause of action for retaliatory discharge.

Stoecklein requests in the alternative that he be permitted to amend his complaint to allege violation of the terms of the IHRA, since he cannot be denied an avenue to vindicate his rights under state law. In order to invoke the provisions of the IHRA, however, Stoecklein must comply with those provisions. The IHRA does not provide for a private right of action in state court for violation of the IHRA, but instead requires that a complainant first exhaust administrative remedies under that Act, then seek review of the administrative decision in state court. IHRA, Ill.Rev.Stat. ch. 68, § 8–111. Since Stoecklein has apparently not complied with the IHRA's own provisions, he cannot bring a cause of action under that Act. *See Beane v. Millers Mutual Insurance Association of Alton*, 90 Ill.App.3d 258, 261–62, 45 Ill.Dec. 542, 545, 412 N.E.2d 1124, 1127 (5th Dist.1980). Count II is therefore dismissed.

*Count III*

In Count III Stoecklein alleges that under the "totality of the circumstances," ITW's conduct rises to the level of intentional infliction of emotional distress under Illinois law. ITW argues that this count should be dismissed (1) because it in essence simply restates the discrimination charge and is therefore preempted by the exclusive remedies of the IHRA; (2) because it alleges insufficient facts to demonstrate that ITW engaged in extreme and outrageous conduct or to show that Stoecklein suffered severe emotional distress; and (3) because it raises factual issues more complex than in Count I and therefore is an inappropriate cause of action over which to exercise pendent jurisdiction.

Under Illinois law, a plaintiff seeking recovery for intentional infliction of emotional distress must allege facts showing (1) that the conduct by defendant was extreme and outrageous; (2) that the plaintiff has suffered severe emotional distress; (3) that the defendant's conduct was intentional or so reckless that the defendant knew severe emotional distress was substantially certain to result; and (4) that

matically cross-filed by that agency with the IDHR. There is no evidence in the record at this time to show that such a cross-filing actually took place; but if it did, Stoecklein has already properly commenced state proceedings for purposes of § 14(b). *See* Work Sharing

Agreement Between the Equal Employment Opportunity Commission and the Illinois Department of Human Rights at 2 (4/14/83); *Mohasco*, 447 U.S. at 816–17, 100 S.Ct. at 2491–92; *Love v. Pullman*, 404 U.S. at 525, 92 S.Ct. at 618.

defendant's conduct was the actual and proximate cause of plaintiff's emotional distress. *Public Finance Corp. v. Davis,* 66 Ill.2d 85, 89–90, 4 Ill.Dec. 652, 654, 360 N.E.2d 765, 767 (1976). In defining the elements of the tort, the Illinois Supreme Court in *Public Finance* stated that the defendant's behavior must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency," and the emotional distress caused by such behavior must be "so severe that no reasonable man could be expected to endure it...." *Public Finance,* 66 Ill.2d at 90, 4 Ill.Dec. at 654, 360 N.E.2d at 767.

We agree with ITW that when Stoecklein's allegations are taken as true, they do not establish, beyond the discriminatory conduct and loss of employment supporting his age discrimination claim, the necessary outrageous conduct and severe emotional distress to support a cause of action for intentional infliction of emotional distress.[8] Stoecklein's factual allegations are that ITW demoted him in 1980 and finally forced him to retire in December of 1981 because of his age, after approximately two-and-one-half months of vacillating about when he would finally be required to leave work and after reneging on a promise to provide 26 pay periods of severance pay and job counselling. As a result, Stoecklein suffered severe financial hardship, the stigma of loss of employment and unspecified "severe emotional distress." These allegations do not rise to the level of outrageousness necessary to support the cause of action in Count III. While the alleged discriminatory discharge and consequent loss of employment if proven were wrongful under the ADEA and by themselves may have caused emotional distress, they are insufficient without more to establish extreme and outrageous conduct. The additional allegations of broken promises and vacillation and the bare allegation that Stoecklein suffered severe emotional distress do not add enough to permit the claim to survive under Illinois law.[9] We therefore dismiss Count III of the complaint as well.

_____

Accordingly, ITW's motion to dismiss is granted with respect to Counts II and III but denied as to Count I. It is so ordered.

---

**8.** In examining the sufficiency of the complaint, we must go beyond Stoecklein's conclusory allegations that ITW's conduct was "extreme and outrageous" and that he suffered "severe emotional distress." Those are conclusions of law, not facts, which must be supported by factual allegations in the complaint.

**9.** *Compare Witkowski v. St. Anne's Hospital of Chicago,* 113 Ill.App.3d 745, 754, 69 Ill.Dec. 581, 447 N.E.2d 1016 (1st Dist.1983) (alleged wrongful discharge to prevent plaintiff from securing long-term disability benefits held not extreme and outrageous enough to state claim), *with Milton v. Illinois Bell Telephone Co.,* 101 Ill. App.3d 75, 56 Ill.Dec. 497, 427 N.E.2d 829 (1st Dist.1981) (employer's harassment and eventual termination of plaintiff for refusal to file falsified work reports in violation of Illinois law held sufficiently outrageous to state a claim) *and Robertson v. Travelers Insurance Co.,* 100 Ill.App.3d 845, 56 Ill.Dec. 222, 427 N.E.2d 302 (5th Dist.1981) (allegations that employer's insurance company induced plaintiff to rely on its assurances of fair dealing until statute of limitations had run on workmen's compensation claim, *then refused to honor the claim, forcing* plaintiff to borrow from relatives, go on public aid, accept charity and become "highly nervous and forgetful," sufficient to state claim).