**Harold C. BOYD, Plaintiff-Appellee,**

v.

**MADISON COUNTY MUTUAL INSURANCE COMPANY, Defendant-Appellant.**

**No. 80–1803.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 8, 1981.

Decided July 13, 1981.

Rehearing Denied July 31, 1981.

Amy Rehm Hinderer, St. Louis, Mo., for defendant-appellant.

James E. Gorman, Edwardsville, Ill., for plaintiff-appellee.

Before FAIRCHILD, Chief Judge, and SWYGERT and SPRECHER, Circuit Judges.

PER CURIAM.

This is an appeal from the district court's order granting judgment in plaintiff's favor on his claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(f)(3). The issues presented in this appeal are: (1) did the trial court err in failing to dismiss the case for lack of jurisdiction because plaintiff failed to meet the 180-day filing requirement, (2) did the trial court err in finding that plaintiff made out a prima facie case of discrimination, and (3) did the trial court err in finding that defendant had not met its burden of showing a legitimate nondiscriminatory reason for offering its attendance bonus only to some of its employees. We reverse the decision of the district court because we find that defendant successfully rebutted plaintiff's prima facie case of discrimination in compensation based on sex.

## I

Plaintiff was employed by Madison County Mutual Insurance Company as claims superintendent from May 1, 1970 to April 25, 1974. He was one of four supervisory or management personnel, all of whom were men. Madison County also employed claims adjustors; during 1973 and 1974, all of these positions were filled by men. Both the management personnel and the claims adjustors were considered "professional" employees by Madison County. Defendant classified the rest of its employees as "clerical"; during the years in question, all clerical employees were women.

In December 1972, defendant's board of directors adopted the following policy, to become effective January 2, 1973:

Employees with excellent attendance records will be rewarded. To accomplish this all employees will earn and accrue bonus pay as follows:

* * * * *

Those employees who have completed their first year of employment will accrue three bonus pay days during their second year of employment.

* * * * *

Time taken off from work for any reason will be charged against the accrued bonus pay.

If any employee is away from work for a period in excess of the employee's accrued bonus pay days the Company will make the determination as to whether the employee's monthly pay should be reduced for excessive time away from work.

The evidence adduced at trial established that defendant paid attendance bonuses only to clerical employees, that attendance records were kept only for clerical employees,[1] that the highest paid clerical employee earned $600 a month, and that plaintiff earned $1,300 a month. After plaintiff's complaint was investigated by the Equal Employment Opportunity Commission (EEOC), defendant's board of directors amended the bonus policy by specifying that it applied only to clerical employees. Clinton Rogier, defendant's secretary-treasurer and general manager, testified that this amendment reflected the board's intent when it originally adopted the policy. He further testified that the purpose of the policy was to reduce absenteeism among clerical employees, and that when the policy was adopted there was no absenteeism problem with the adjustors.

Plaintiff filed a complaint with the EEOC alleging that defendant discriminated against him on the basis of his sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a),[2] when

---

1. With the exception of one male employee, whose serious illness necessitated that defendant record his absences.

2. The statute provides in relevant part: "It shall be an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex ...."

it made all female employees but no male employees eligible for attendance bonuses. The EEOC investigated, then issued a right-to-sue letter on November 11, 1975. Plaintiff filed his complaint in the district court on February 11, 1976; after a bench trial, the district judge entered judgment for plaintiff on May 8, 1980. This appeal followed.

## II

Section 706(e) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(e), provides in relevant part:

> A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred ... except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred.

Section 706(c), 42 U.S.C. § 2000e–5(c), provides in part:

> In the case of an alleged unlawful employment practice occurring in a State ... which has a State ... law prohibiting the unlawful employment practice alleged and establishing or authorizing a State ... to grant or seek relief from

such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, no charge may be filed under subsection (b) of this section by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State ... law, unless such proceedings have been earlier terminated ....

In *Mohasco Corp. v. Silver*, 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980), the Supreme Court held that these two sections of the statute, read together, mean that a charge is not filed for purposes of section 706(e) until after the deferral period has expired. Thus in the case at bar, plaintiff's charge was not filed on October 16, 1974, apparently the date the EEOC received plaintiff's allegations of a Title VII violation. Rather, the charges were filed on December 16, 1974, sixty-one days after the EEOC forwarded Boyd's letter to the state agency.[3] Plaintiff therefore filed his charges within the 300-day time limit.

■ The time period starts to run from the date on which the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e–5(e). Defendant contends that February 4, 1974, the date that defendant paid attendance bonuses earned during 1973 to the clerical employees, is the date of the alleged unlawful practice. Plaintiff's position is that the attendance bonus policy was a Title VII violation that continued until April 28, 1974, the date of plaintiff's termination.[4] We agree with the district court's finding that this was a continuing violation.[5] *See Bartmess v. Drewrys U.S.A.,*

---

**3.** The EEOC's letter dated October 16, 1974 advised plaintiff that it was sending a copy of his letter to the Illinois Fair Employment Practices Commission. We therefore treat the state agency proceedings as having been instituted on that date. *Mohasco Corp. v. Silver*, 447 U.S. 807, 815, 100 S.Ct. 2486, 2491, 65 L.Ed.2d 532 (1980).

**4.** A continuing violation ceases, and the time period for filing an employment discrimination charge begins to run, when the employment relationship is terminated. *See In re Consolidated Pretrial Proceedings*, 582 F.2d 1142, 1149 (7th Cir. 1978); *Laffey v. Northwest Airlines, Inc.*, 567 F.2d 429, 473 (D.C.Cir.1976).

**5.** Defendant contends that the attendance bonus policy could not be a continuing violation because clerical employees who terminated their employment during a calendar year did not receive partial attendance bonuses for the portion of the year prior to their terminations. The fact that the bonuses were paid only to those employees who remained with the company for the full calendar year does not change the nature of the violation. It may indicate that plaintiff is not entitled to a bonus for the part of 1974 prior to his termination, but we do not need to reach that issue.

*Inc.,* 444 F.2d 1186, 1188–89 (7th Cir.), *cert. denied,* 404 U.S. 939, 92 S.Ct. 274, 30 L.Ed.2d 252 (1971) (employer's maintenance of allegedly discriminatory retirement plan held to be continuing violation); [1976] EEOC Compl. Manual ¶ 4102, § 208.1 ("a policy is by nature continuing"). Therefore, plaintiff's filing of his charge with the EEOC was timely.

### III

The essence of plaintiff's complaint is that defendant discriminated against him on the basis of sex by offering an attendance bonus to all female employees but no male employees. Section 703(h) of Title VII, 42 U.S.C. § 2000e–2(h) (the Bennett Amendment), provides:

> It shall not be an unlawful employment practice under this title for any employer to differentiate upon the basis of sex in determining the amount of the wages or compensation paid to employees of such employer if such differentiation is authorized by the provisions of [the Equal Pay Act, 29 U.S.C. § 206(d)].

The Equal Pay Act, 29 U.S.C. § 206(d)(1), provides in part:

> No employer . . . shall discriminate . . . between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which he pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to . . . (iv) a differential based on any factor other than sex . . . .

According to defendant, section 703(h) of Title VII limits the prohibition against sex-based discrimination in compensation to situations in which the employees are performing the same or substantially the same work, in the manner that the Equal Pay Act is limited. Because plaintiff's work

entailed different responsibilities from those of defendant's female employees, defendant argues, plaintiff can raise no claim of sex discrimination in compensation. We disagree.

In *County of Washington v. Gunther,* —— U.S. ——, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981), the Supreme Court rejected the broad interpretation of the Bennett Amendment urged by defendant in the instant case. In *Gunther,* female guards at a county jail brought an action for sex discrimination under Title VII. Plaintiffs alleged that the defendant intentionally discriminated against them by setting the pay scale for female guards not only lower than the scale for male guards but also lower than the level indicated by defendant's own evaluation of the worth of the female guards' jobs. The defendant urged that the Bennett Amendment restricted claims of sex-based wage discrimination to claims that could be brought under the Equal Pay Act; thus, because the job of female guard was not substantially equal to the job of male guard,[6] defendant argued that plaintiffs failed to make out a violation of Title VII.

The Supreme Court, after analyzing the legislative history and administrative interpretation of the Bennett Amendment and the purposes of Title VII, concluded that a plaintiff may state a claim of sex-based discrimination in compensation under Title VII without proving that he or she was performing a job substantially equal to that held by a higher-paid member of the opposite sex. *Id.* at ——, 101 S.Ct. at 2254. The Court found that "only differentials [in compensation] attributable to the four affirmative defenses of the Equal Pay Act are 'authorized' by that Act within the meaning of § 703(h) of Title VII." *Id.* at ——, 101 S.Ct. at 2249.

■ Once it is established that the Bennett Amendment and the Equal Pay Act standards do not govern plaintiff's claim, classic Title VII analysis must be applied to

---

**6.** The district court found that the jobs were not substantially equal because "the male guards supervised more than 10 times as many prisoners per guard as did the female guards, and . . . the females devoted much of their time to less-valuable clerical duties." —— U.S. at ——, 101 S.Ct. at 2245.

this case. *See Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). We agree with the district court that plaintiff's evidence established a *prima facie* case of sex discrimination. Women were eligible for bonuses. Men were not.

▌ Once a *prima facie* case of sex discrimination is established, the burden then shifts to the defendant to produce admissible evidence that would allow the trier of fact rationally to conclude that the decision not to award plaintiff the attendance bonus was based on a legitimate, nondiscriminatory reason. *See Texas Dep't of Community Affairs, supra,* 450 U.S. at 253, 101 S.Ct. at 1094. The district court failed to consider whether defendant carried this burden of production. The record, however, demonstrates that defendant did show that it had a legitimate, nondiscriminatory reason for awarding attendance bonuses only to those employees it classified as clerical, all of whom happened to be women, thereby rebutting plaintiff's *prima facie* case.

Mr. Rogier, defendant's general manager, testified that the policy was implemented in response to a serious absenteeism problem with the clerical staff. Plaintiff himself testified that at the general meeting in which this policy was introduced, there was some talk that it was being implemented to correct the absenteeism problem of certain employees.

All clerical employees were required to be in the office eight hours a day, five days a week. Their coffee breaks and lunch hours were tightly regulated, records were kept of their attendance,[7] and they were docked for sick days. In contrast, plaintiff and other claims adjustors were free to come and go from the office as they pleased. Much of their time was spent on the road, and they were not docked for lunch hours in

excess of one hour, nor were they docked for sick days. No attendance records were kept for claims adjustors, with the exception of one who was chronically ill.

Plaintiff introduced evidence indicating that several clerical employees were wrongly classified as such, from which it could be inferred that defendant was guilty of illegal sex stereotyping. But evidence that all the women employees were classified as clerical workers, and all the male employees were claims adjustors, is irrelevant to plaintiff's case. If he introduced this evidence to show that defendant's explanation that the attendance bonus was intended only for clerical employees (all of whom happened to be women) was merely a pretext for a sexually discriminatory decision, he proves too much.

▌ In order to prove a pretext, which plaintiff is entitled to do to rebut defendant's showing of a legitimate, nondiscriminatory purpose, *see Texas Dep't of Community Affairs, supra,* 450 U.S. at 254, 101 S.Ct. at 1094; *McDonnell Douglas Corp., supra,* 411 U.S. at 804–05, 93 S.Ct. at 1825, he must introduce evidence tending to show other discriminatory treatment by the defendant towards plaintiff or other male employees, or a general pattern of discrimination against male employees. *Id.* Plaintiff's evidence proves the opposite—that if anyone was discriminated against, it was the female, clerical employees. But plaintiff is not the person to bring that claim, and to allow him to rebut defendant's proof of a legitimate business purpose with evidence of discrimination against female employees, rather than male employees, is an affront to the meaning and intent of Title VII. We therefore find that defendant successfully rebutted plaintiff's *prima facie* case of sex discrimination, and that plaintiff was unable to show that defendant's business purpose was pretextual.

Accordingly, the judgment of the district court is Reversed.

---

7. Plaintiff argues that no personnel records were kept until 1979. The record indicates that this is true, but it also shows that attendance records, as opposed to personnel files, were

kept of clerical employees for 1973 and 1974. Defendant introduced the attendance records for eight clerical employees as its Exhibit 1.