Mecene NAZAIRE, Plaintiff-Appellant,

v.

TRANS WORLD AIRLINES, INC. and International Association of Machinists and Aerospace Workers, Defendants-Appellees.

No. 84–2136.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 20, 1986.

Decided Dec. 9, 1986.

(TWA) for eleven years as an automotive mechanic in its Chicago-O'Hare Airport facility. During that time, Mr. Nazaire was a member in good standing of the International Association of Machinists and Aerospace Workers (Union). On April 4, 1981, Mr. Nazaire was laid off as part of a reduction in force at TWA's O'Hare facility. Following the layoff, on May 7, 1982, Mr. Nazaire filed suit against TWA and the Union in district court. Mr. Nazaire sought relief pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* (Title VII) and 42 U.S.C. § 1981, alleging, *inter alia,* that TWA had discriminated against him on the basis of his race by manipulating the classification seniority of various employees and that the Union had similarly discriminated against him by refusing to press his grievances with respect to the allegedly discriminatory seniority system. The district court granted summary judgment for TWA and the Union. The court held that Mr. Nazaire's claims were time-barred and that, even if they were timely, Mr. Nazaire's allegations with respect to the seniority system and with respect to other alleged acts of discrimination were insufficient to support a claim under either statute. For the reasons set forth below, we affirm the judgment of the district court.

I

The district court disposed of this case by granting a motion for summary judgment in favor of TWA and the Union. Therefore, in reviewing the district court's decision, we must construe the facts alleged in the light most favorable to Mr. Nazaire. *See Posey v. Skyline Corp.,* 702 F.2d 102, 103 (7th Cir.), *cert. denied,* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). Accordingly, the following statement of facts is derived from Mr. Nazaire's pleadings, deposition and affidavits.

Mr. Nazaire is a black male of Haitian descent. He has been a naturalized U.S. citizen since 1978. Although there is some

Laura A. Kaster, Jenner and Block, Chicago, Ill., for plaintiff-appellant.

Michael D. Gordon, Jolley, Moran, Walsh, Hager & Gordon, Kansas City, Mo., Elliot H. Shaller, Dow, Lohnes & Albertson, Washington, D.C., for defendants-appellees.

Before WOOD, CUDAHY and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Appellant Mecene Nazaire was employed by appellee Trans World Airlines, Inc.

confusion about the date,[1] the pleadings and Mr. Nazaire's deposition and affidavit indicate that Mr. Nazaire was hired by TWA at O'Hare Airport on May 21, 1970. On all relevant company documents, Mr. Nazaire's company seniority date is listed as May 21, 1970. Mr. Nazaire's first actual day of work appears to have been May 25, 1970, the date of the bid notice. For purposes of administering the collective bargaining agreement (Agreement) between TWA and the Union, Mr. Nazaire was assigned a classification seniority date of May 26, 1970.[2]

In January 1972, Mr. Nazaire was furloughed by TWA for approximately six months. Mr. Nazaire did not take any official action at that time to protest the seniority system, although at least two of the employees alleged to have received higher seniority than Mr. Nazaire were still employed at that time. Mr. Nazaire did speak to his union representative, Mr. Bernson, about the operation of the seniority system. Specifically, he sought an explanation of why two employees, Bartkus and Brown, who, according to Mr. Nazaire, had been hired after him, had not been laid off. Mr. Bernson explained to Mr. Nazaire that Mr. Brown had been hired the same day as Mr. Nazaire but was not laid off because, under the Agreement, when two employees had the same seniority, the employee whose name was first alphabetically had the greater seniority. Mr. Bernson also explained that Mr. Bartkus had greater seniority because he had transferred from within the company and therefore

1. In his deposition, Mr. Nazaire indicated that he started work at TWA on May 26, 1970. Dep. Tr. at 15. However, prior to signing an affidavit to the effect that the testimony contained therein was accurate, he altered his employment history to show that he was hired on May 21, 1970, he began working on May 25, 1970, and his classification date was May 26, 1970. *See id.* (notations in margin); Letter from Richard C. Moenning to Elliot H. Shaller and Michael D. Gordon, Corrections to Deposition Transcript at 1 [hereinafter Deposition Correction Letter]. In his affidavit, Mr. Nazaire indicated that he was told to report to work on May 21, 1970. R.49 at ¶ 3. However, he also characterized that date as his company seniority date. *Id.* In his supplemental affidavit, Mr. Nazaire stated that May 21, 1970 is the date that he was hired by TWA. R.64 at ¶ 4. Additionally, Mr. Nazaire's April 22, 1980 EEOC charge stated that his seniority date was May 26, 1970. Union Ex.7E.

2. As a member of the Union, Mr. Nazaire was subject to seniority as defined by the collective bargaining agreement (Agreement). According to the Agreement, seniority referred to classification seniority. Article 6(a) of the Agreement provides:

(a) Seniority (Company and Classification)
(1) Seniority shall be defined as the length of service for which an employee receives credit, regardless of location, in any of the classifications covered by this Agreement with this Company or any of its predecessors.
(2) The definition of seniority shall include ability to perform the required work of the job in a satisfactory manner, and except as hereinafter provided shall accrue from the date of entering a classification on a regular assignment. Seniority shall be applicable to all classifications covered by the Agreement. R.1, Ex.A at 26.

Classification seniority is determined according to bid dates. The method for determining classification seniority is detailed in article 10(b)(18) of the Agreement:

The seniority date and the effective date of wage rate of the successful bidder, including employees promoted, shall be the reporting date set forth in the bid notice received by the Local Union Representative at the time the vacancy was announced. Regardless of the *reporting date of the successful bidder,* no employee will be required to transfer to another point on the system with less than seventeen (17) days written notice. The seniority date of newly hired employees shall be one (1) calendar day after the reporting date specified in the bid notice or the date they first report to work, whichever is later. An employee entering a higher classification will start at the minimum pay rate of the higher classification or the pay rate he then held in his former classification, whichever is higher. He will remain at such rate until the date of his next automatic increase, at which time he shall advance to the next highest pay rate of the higher classification.
R.1, Ex.A at 54.

The Agreement also provides for situations in which two or more employees are hired in the same classification on the same date. Article 6(a)(2)(c) provides that, "[i]f two or more employees in the same basic classification, Mechanic or below, have the same classification seniority date, Company seniority shall govern. Should this be one and the same date, the alphabetical order of the employees' names shall govern." R.1, Ex.A at 26.

was afforded seventeen extra days of seniority because he was a transferee. Mr. Nazaire claims to have been dissatisfied with this response. He did not, however, pursue the matter further.

Mr. Nazaire has also claimed, at least obliquely, that the company engaged in or, at least, acquiesced in a pattern of discrimination against him. He alleges in his deposition that he was slapped by a co-worker, Mr. Bartkus, in 1971; that he was called "black" and "monkey" by his co-workers; that he was assigned to do work alone that was ordinarily done by two men; that in 1978 he was given only two days of General Motors training instead of the scheduled five days; and that he was denied the position of lead mechanic. Mr. Nazaire also claimed that he was never given preferred days off and that he was never allowed to work on holidays or other overtime periods, for which he would have been paid double the hourly rate or more. The only formal complaint made by Mr. Nazaire regarding these purported acts of discrimination was directed not to the Union or to TWA management but, rather, to the Reverend Jesse Jackson (then head of PUSH), who spoke to the company's management on Mr. Nazaire's behalf.

Finally, on April 3, 1979, Mr. Nazaire filed an EEOC charge against TWA alleging racial discrimination. The charge alleged that certain white employees were accorded various rights, based upon allegedly incorrect seniority dates, that were denied to Mr. Nazaire. The EEOC dismissed the charge due to Mr. Nazaire's failure to cooperate. Although the EEOC issued a right-to-sue notice, Mr. Nazaire never brought suit against TWA. On April 22, 1980, Mr. Nazaire filed another EEOC charge against TWA, which was substantially the same as that filed in 1979. He also filed an EEOC charge naming the Union as a party. The charge focused on Mr. Nazaire's belief that TWA had discriminated against him in assigning seniority dates. It alleged that TWA employees Pharis, Wonkowski, Guth, and Bartkus (all of whom are white) were given preferential seniority dates. Mr. Nazaire also charged

that the Union failed to represent him with respect to the seniority dates. The EEOC determined that there was no reasonable cause to believe the allegations of that charge and issued a right-to-sue notice. Again, no suit was filed.

On April 4, 1981, Mr. Nazaire was laid off as part of a reduction in force at TWA's O'Hare facility. The layoff was based on seniority. At the time of the layoff, Mr. Nazaire was informed that he had a right to utilize his classification seniority to "bump" into a mechanic's job in New York without losing any pay or seniority credit. Mr. Nazaire declined the offer in favor of the layoff.

In May 1981, Mr. Nazaire filed charges against TWA and the Union, alleging discrimination on the basis of race in the assignment of seniority dates. He also alleged that he was laid off in retaliation for his filing of the prior EEOC charges. He further alleged that the Union had failed to represent him adequately with respect to these charges. These charges were filed not only with the EEOC but also with the Illinois Commission on Human Rights, which dismissed the charges. This dismissal was confirmed on appeal in February 1982. On February 10, 1982, the EEOC, finding no reasonable cause to believe that TWA had discriminated against Mr. Nazaire, issued a right-to-sue notice with respect to TWA. On July 27, 1982, the EEOC found that there was no reasonable cause to believe that the Union had discriminated against Mr. Nazaire and issued a right-to-sue notice.

In May 1982, Mr. Nazaire filed a complaint in the district court against TWA and the Union alleging discrimination in violation of both Title VII and 42 U.S.C. § 1981. In late 1982, the Union and TWA filed motions for summary judgment and supporting memoranda. On April 25, 1984, the district court granted the defendants' motions for summary judgment. The court held that Mr. Nazaire's claim was time-barred because it was premised on a seniority designation made in 1970 and known to

Mr. Nazaire by January 1971.[3] Subsequently, Mr. Nazaire filed a motion to vacate the judgment, which was denied. This appeal followed.

## II

### A. *Timeliness*

1. The general rule: a "present violation"

We turn first to the appellees' contention that Mr. Nazaire's claims are barred by the applicable statute of limitations. The district court held that Mr. Nazaire's Title VII and section 1981 claims were time-barred. The court found that the trigger date—the date that started the running of the limitations period—for Mr. Nazaire's claim was January 1971. At that time, the seniority roster containing Mr. Nazaire's seniority date as well as the seniority dates of Mr. Brown and Mr. Bartkus first became known to Mr. Nazaire. Accordingly, the district court held that Mr. Nazaire's filing of an EEOC charge in 1981 was untimely.

 "It should not be forgotten that time-limitations provisions themselves promote important interests; 'the period allowed for instituting suit inevitably reflects a value judgment concerning the point at which the interests in favor of protecting valid claims are outweighed by the interests in prohibiting the prosecution of stale ones.'" *Delaware State College v. Ricks,*

449 U.S. 250, 259–60, 101 S.Ct. 498, 505, 66 L.Ed.2d 431 (1980) (quoting *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 463–64, 95 S.Ct. 1716, 1721–22, 44 L.Ed.2d 295 (1975)). The limitations period for employment discrimination claims under Title VII and section 1981 commences on the date of the alleged unlawful employment practice. *Ricks,* 449 U.S. at 258, 101 S.Ct. at 504 (Title VII and section 1981 claims); *see Perez v. Laredo Junior College,* 706 F.2d 731, 733 (5th Cir.1983), *cert. denied,* 464 U.S. 1042, 104 S.Ct. 708, 79 L.Ed.2d 172 (1984) ("In deciding when the statute of limitations commences to run under §§ 1981 and 1983, we look to the Title VII cases."); *Boyd v. Madison County Mut. Ins. Co.,* 653 F.2d 1173, 1176 (7th Cir.1981), *cert. denied,* 454 U.S. 1146, 102 S.Ct. 1008, 71 L.Ed.2d 299 (1982) (Title VII claim). In order to satisfy the statute of limitations requirement under Title VII or section 1981, a plaintiff must establish a "present violation" by showing that the alleged discriminatory act took place during the relevant limitations period. *See Ricks,* 449 U.S. at 258, 101 S.Ct. at 504; *United Airlines, Inc. v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977). The complaint cannot be based merely on the present effect of an act of discrimination which took place before the limitations period. *Ricks,* 449 U.S. at 258, 101 S.Ct. at 504; *see Evans,* 431 U.S. at

---

**3.** The district court's memorandum decision in this case is indeed sketchy. Arguably, the court also held that, if the claim was not time-barred, it failed to state a claim upon which relief could be granted. *See* Fed.R.Civ.P. 12(b)(6), 56. The district court's entire discussion is as follows:

Defendants have also filed motions for summary judgment. Even assuming that plaintiff's claims under Title VII and § 1981 are not time-barred by virtue of the fact that the incidents complained of occurred later (even though they were based upon seniority and not upon race), the facts in the record indicate that he had the same seniority date as did the two white employees who were in the same job classifications, that of mechanic. All of these persons, plaintiff, Brown, and Bartkus, were accorded the same "bid reporting date" of May 25, 1970, and it is undisputed that when workers share the same seniority date, their benefits are determined alphabeti-

cally (Schechter affidavit dated Dec. 9, 1982, Exhibit L). Plaintiff contends that his seniority date was actually May 21, 1970 which was four days earlier than that of Brown and Bartkus. However, the documents with which he supports this argument are not authenticated and do not raise a genuine issue of fact which requires further hearing on the date which appears in the defendant's personnel records.

At most, plaintiff has merely shown that some confusion may exist in the personnel records or practices of the defendant T.W.A. This is not supported by any evidence of racial discrimination, and plaintiff has not shown that the records are based upon anything other than a mistake. Therefore, he has failed to satisfy his burden that they were a pretext or subterfuge, even assuming that he has made out a *prima facie,* non-barred case. R.65 at 3–4.

558, 97 S.Ct. at 1889. For instance, in *Evans*, the plaintiff sued her employer for an alleged continuing sex discrimination violation. Evans had been forced to resign from her flight attendant position because of the company's "no marriage" policy for female flight attendants. Subsequently, this policy was deemed to violate Title VII and was discontinued. When Evans was rehired several years later, she was given no seniority credit for her prior service. She sued, claiming that the airline's seniority policy caused her to suffer in the present the deleterious effect (no seniority) of the company's past act of forcing her to resign. The Supreme Court rejected Evans' theory, explaining that, although "the seniority system gives present effect to a past act of discrimination, ... [a] discriminatory act which is not made the basis for a timely charge is the legal equivalent of a discriminatory act which occurred before the statute was passed.... [I]t is merely an unfortunate event in history which has no present legal consequences." 431 U.S. at 588, 97 S.Ct. at 1889.

In *Ricks*, the plaintiff had been a faculty member at Delaware State College who was notified that he was denied tenure. His employment at the college ended more than a year after the tenure decision. Ricks filed an EEOC charge approximately three months before his employment terminated. He then filed suit, alleging discrimination on the basis of his national origin in violation of Title VII and section 1981. The Court rejected Ricks' contention that the limitations period began to run on the date that his employment ended. 449 U.S. at 259, 101 S.Ct. at 504. Rather, the Court concluded that the limitations period commenced when the tenure decision was made and the plaintiff was notified. *Id.* The Court stated that to determine the date of the illegal action, it must, "identify precisely the 'unlawful employment practice' of which [plaintiff] complains," *id.* at 257, 101 S.Ct. at 503, because " '[t]he proper focus is upon the time of the *discriminatory acts*, not upon the time at which the *consequences* of the acts became most painful,' " *id.* at 258, 101 S.Ct. at 504 (quoting *Abram-*

son v. University of Hawaii, 594 F.2d 202, 209 (9th Cir.1979) (emphasis added in *Ricks*)).

## 2. A "continuing violation"

Mr. Nazaire submits that his complaint in 1982 was timely because TWA's alleged manipulation of the various seniority dates at issue constituted a "continuing violation" and that the last act of the violation was his layoff in 1981. He then argues that "a continuing violation ceases, and the time period for filing an employment discrimination charge begins to run, when the employment relationship is terminated." *Boyd*, 653 F.2d at 1174 n. 4. This is not the first time this court has been confronted with such a "continuing violation" theory. In *Stewart v. CPC Int'l, Inc.*, 679 F.2d 117, 120–21 (7th Cir.1982), this court delineated three instances in which a continuing violation may be found:

> In the first situation, ... a violation of Title VII occurs, and triggers the time limit for filing a charge, when the employee knew or should have known that he or she was discriminated against. This rule is applied in cases, usually involving hiring or promotion practices, where the employer's decision-making process takes place over a period of time, making it difficult to pinpoint the exact day the "violation" occurred.

> \*　　\*　　\*　　\*　　\*　　\*

> The second situation [is one] in which the employer's express, openly espoused policy was alleged to be discriminatory. [This situation existed where, for example] women were forced to retire at 62, while men were forced to retire at 65. The plaintiff filed a discrimination charge shortly before her mandatory retirement. Defendant contended that because she had not yet been forced to retire, her complaint was not timely. This court held that the policy amounted to a continuing violation of Title VII, so that her filing was not premature.

> \*　　\*　　\*　　\*　　\*　　\*

In the third situation, the plaintiff charges that the employer has, for a period of time, followed a practice of discrimination, but has done so covertly, rather than by way of an open notorious policy.... In such cases the challenged practice is evidenced only by a series of discrete, allegedly discriminatory, acts.

Mr. Nazaire contends that the actions taken by TWA fall within the third type of continuing violation described in *Stewart.* He argues that the defendants committed a continuing violation of Title VII and section 1981 by committing a series of discrete, racially discriminatory acts. In one sense, it cannot be said that TWA took covert action with respect to Mr. Nazaire. It is uncontested that TWA followed a policy, as mandated by the Agreement, of posting seniority lists twice per year. Employees were given an opportunity to contest or protest any seniority assignment within fifteen days of posting. Thus, Mr. Nazaire was continuously apprised of both his own seniority date and those of his co-workers. The pleadings and affidavits before this court demonstrate that Mr. Nazaire became aware of his seniority date upon being hired in May 1970. He was officially apprised of his seniority date in January 1971 when TWA posted its seniority roster containing Mr. Nazaire's name and classification seniority date. R.59, Ex.A. In his deposition, Mr. Nazaire indicated that he became aware of the alleged discrepancy between his seniority date and that assigned to Mr. Brown in 1970. Dep. Tr. at 85. The 1971 postings also indicated the seniority dates assigned Mr. Bartkus and Mr. Brown, both of whom, according to Mr. Nazaire, were given more favorable seniority treatment than he was. That Mr. Nazaire was aware of his seniority status relative to Mr. Bartkus and Mr. Brown, at least by 1972, was demonstrated by Mr. Nazaire's conversation with his union representative on the occasion of his 1972 layoff. In a letter written to the Union in 1980, Mr. Nazaire stated:

On January 25, 1972 I was laid off from my employment with Trans World Airlines. After receiving the letter I went to Mr. Bernson to discuss the matter of seniority with him. Mr. Bernson told me that Mr. W. Brown, being hired the same day, had more seniority than me because his name comes before mine alphabetically. He also told me that Mr. Bartkus had more seniority than me because the company allowed him 17 days seniority due to the fact that he had transferred from the ramp service. This fact was not mentioned in the agreement between T.W.A. and the International Association of Machinists and Aerospace Workers. Even though I felt they were wrong I took the layoff.

Union Ex.26–A. Mr. Nazaire also admitted in his deposition that he was aware of the seniority problems in 1972:

Q. Were the things that you discussed with Mr. Bernson in 1972, identical to the matters that you are raising in this suit?

A. Yes.

Q. So the seniority problems that you had with these different people ... you knew about in order to talk with Mr. Bernson about them in 1972?

A. Yes, sir.

Q. Mr. Bernson, according to Exhibit 26–A, explained to you why these different people had the seniority that they had?

\* \* \* \* \* \*

A. Mr. Bartkus had more seniority than me because the Company allowed him—allowed—the Company allowed Mr. Bartkus 17 days.

Dep. Tr. at 195–96.

■ Mr. Nazaire knew or should have known in 1972 that there was a possible discrepancy in the seniority list. However, we must also determine when he knew or should have known that he was being subjected to racial discrimination, the gravamen of the present complaint. Certainly, there can be no controversy that, by the time he filed his first EEOC complaint on April 3, 1979, he was aware of the facts forming the basis of his discrimination complaint. It is also clear to us that he knew

or should have known these facts well before that date. Indeed, after reading the pleadings, and the supporting material, Mr. Nazaire's deposition, and the affidavits in the light most favorable to Mr. Nazaire, we conclude that there is no question of material fact as to whether, by 1975, Mr. Nazaire knew or should have known the facts which form the basis of his discrimination complaint. By that time, the seniority structure of which he complains was, even when the evidence is read in the light most favorable to Mr. Nazaire, substantially in place. R.30 at 3–4; Dep. Tr. at 77, 143, 196–201. Mr. Nazaire either knew or should have known a sufficient number of the seniority dates of his fellow workers to ascertain whether he had been treated differently than non-black workers. He had been apprised by a fellow worker that the disparity in pay and seniority between the two of them was due to their racial differences, Dep. Tr. at 84–85, and the racially-based indignities which he now alleges had apparently taken place. Indeed, his own affidavit makes clear that, in the early 1970's, he complained to the Reverend Jesse Jackson about racial discrimination on the job. R.49, Affidavit ¶ 5. His inconsistent equivocations on matters which are not outcome determinative, unsupported by other evidence, hardly constitute "a showing sufficient to establish the existence of an element essential to [his] case."[4] *Celotex Corp. v. Catrett*, —— U.S. ——, ——, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). As Judge Cummings wrote in a somewhat similar situation, "[p]laintiffs confuse credibility issues with the district court's duty to ignore sham issues in determining the appropriateness of summary judgment." *Ba-*

*brocky v. Jewel Food Co.*, 773 F.2d 857, 861 (7th Cir.1985); *see generally Miller v. A.H. Robbins Co.*, 766 F.2d 1102, 1104 (7th Cir.1985). Mr. Nazaire has simply raised no *genuine* issue of material fact as to whether he was unaware of the alleged racial discrimination about which he now complains until sometime after 1975. *See Anderson v. Liberty Lobby, Inc.*, —— U.S. ——, ——, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986).

### 3. The specific time limitations at issue

We must look to the limitations periods at issue in this case. It is well-settled that, to be timely, a Title VII charge must be filed with the EEOC within 300 days of the challenged action. 42 U.S.C. § 2000e–5(e); *see Martinez v. United Auto., Aerospace & Agric. Implement Workers*, 772 F.2d 348, 350 (7th Cir.1985). Because Mr. Nazaire's cause of action for discrimination accrued significantly before April 3, 1979, the EEOC complaint filed on May 20, 1981 was not timely filed. This court has stated that "if you do not file a timely charge with the EEOC, you cannot bring a suit under Title VII." *Martinez*, 772 F.2d at 350 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 798, 93 S.Ct. 1817, 1822, 36 L.Ed.2d 668 (1973) (dictum) and *Choate v. Caterpillar Tractor Co.*, 402 F.2d 357, 359 (7th Cir.1968)). The filing of a timely charge with the EEOC is not a jurisdictional prerequisite to suit, and, like statutes of limitations, is subject to waiver, estoppel and equitable tolling. *Zipes v. TWA, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982). No such equitable reasons have been advanced in this case. Thus, the Title VII claim is clearly time-

---

**4.** According to Mr. Nazaire's deposition testimony, he was not aware of all of the seniority dates of those of his non-black co-workers who were alleged to have been given preferential dates until 1976, 1980, 1981 or 1982. Dep. Tr. at 77–80, 143, 196–201; Deposition Correction Letter at 2. It is not essential, however, for Mr. Nazaire to have known of every seniority date. The key determination is the time at which Mr. Nazaire knew or should have known that the alleged manipulation of seniority dates was motivated by racial discrimination. *See Cervantes v. Imco, Halliburton Services*, 724 F.2d 511, 513

(5th Cir.1984); *Yates v. Mobile County Personnel Bd.*, 658 F.2d 298, 299 (5th Cir.1981) ("The limitations period begins to run from the time that the complainant knows or reasonably should know that the challenged act has occurred, ... [*i.e.*, when] he was aware of all of the facts necessary to claim a Title VII violation."). Thus, Mr. Nazaire's conflicting testimony regarding the date on which he knew Mr. Guth's seniority date, Dep. Tr. at 77–80; Deposition Correction Letter at 2, is not material to the question of when the limitations period began to run.

barred, and summary judgment was properly granted.

 Mr. Nazaire's section 1981 claim is also time-barred. In Illinois, the statute of limitations for claims brought pursuant to section 1981 is five years. *Waters v. Wisconsin Steel Works*, 427 F.2d 476, 488 (7th Cir.), *cert. denied*, 400 U.S. 911, 91 S.Ct. 137, 27 L.Ed.2d 151 (1970).[5] Since Mr. Nazaire knew or should have known the facts which formed the basis of his complaint before May 1977, this claim is also time-barred.

## B. *Other Alleged Discriminatory Acts*

On appeal, Mr. Nazaire asks this court to find that certain acts by his fellow employees coupled with his seniority claim constitute a continuing violation of Title VII and section 1981. The alleged acts of discrimination are: (1) that during the early days of his employment, his co-workers told him that they did not want to work with blacks; (2) that in 1971, he was slapped by Mr. Bartkus purportedly for racial reasons; (3) that for a period of time continuing until 1975, white mechanics hung "voodoo dolls," bearing his name in the shop and said, "They got you, black, up there," Dep. Tr. at 231–32; (4) that he was called "black" and "monkey" by his co-workers; (5) that he was denied the opportunity to work as lead mechanic; (6) that he was given only two days of General Motors training in 1978, whereas his co-workers received five days; and (7) that he was laid off in retaliation for filing the 1979 and 1980 EEOC charges. According to this theory, Mr. Nazaire's layoff in 1981 was but the last in a continuing series of discriminatory acts perpetrated against him by TWA.[6]

It is well-settled that racial harassment may be the basis of an independent claim of a violation of both Title VII and section 1981. *See Hunter v. Allis-Chalmers Corp.*, 797 F.2d 1417 (7th Cir.1986); *Carter v. Duncan-Huggins, Ltd.*, 727 F.2d 1225 (D.C.Cir.1984); *Gilbert v. City of Little Rock*, 722 F.2d 1390 (8th Cir.1983), *cert. denied*, 466 U.S. 972, 104 S.Ct. 2347, 80 L.Ed.2d 820 (1984); *Walker v. Ford Motor Co.*, 684 F.2d 1355 (11th Cir.1982); *DeGrace v. Rumsfeld*, 614 F.2d 796 (1st Cir. 1980); *cf. Tulloss v. Near North Montessori School, Inc.*, 776 F.2d 150 (7th Cir.1985) (national origin discrimination); *Torres v. County of Oakland*, 758 F.2d 147 (6th Cir. 1985) (same). It is equally well-settled that occasional or sporadic instances of the use of racial or ethnic slurs do not in and of themselves constitute a violation of Title VII. *Torres*, 758 F.2d at 152. The question in each case is whether the quantity and frequency of the abusive language are sufficient to state a violation of Title VII or

---

**5.** The Union invites us to change the limitations period for filing a section 1981 claim in light of the Supreme Court's decision in *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). In *Wilson*, the Court decided that all claims brought pursuant to 42 U.S.C. § 1983 are subject to the state's personal injury statute of limitations. In response to *Wilson*, the Third Circuit, in *Goodman v. Lukens Steel Co.*, 777 F.2d 113 (3d Cir.1985), *petition for cert. granted*, —— U.S. ——, 107 S.Ct. 568, 93 L.Ed.2d —— (1986), decided that the limitations period that applied to claims brought pursuant to section 1983 claims should apply to claims brought pursuant to section 1981. We decline to follow the Third Circuit and, instead, adopt the reasoning of Judge Garth's dissenting opinion in *Goodman*. Judge Garth aptly noted that the legislative histories of sections 1983 and 1981 are completely distinct. "[Section] 1983 was conceived, and has been generally applied, as a personal injury statute. Section 1981, however,

is more fundamentally concerned with injury to the contractual or economic rights of minorities, and as such should appropriately be governed by the longer contract statute of limitations." 777 F.2d at 132. This court has consistently held, since *Waters v. Wisconsin Steel Works*, 427 F.2d 476 (7th Cir.), *cert. denied*, 400 U.S. 911, 91 S.Ct. 137, 27 L.Ed.2d 151 (1970), that in Illinois the statute of limitations for section 1981 claims is five years.

**6.** Mr. Nazaire complains of several other purportedly discriminatory acts. However, because we believe that they are incidents of Mr. Nazaire's seniority, we do not consider them separately. These acts include his 1972 layoff; the denial of preferred days off; the denial of the opportunity to work holidays and other premium over-time periods; and his assignment to the *midnight shift* where he allegedly worked with less assistance than did his peers who were assigned to the day shift.

section 1981. This determination must be made on a case-by-case basis after consideration of the totality of the circumstances. *Gilbert*, 722 F.2d at 1394. The *Carter* court has aptly detailed the required showing:

> An employee could be subject to many racially derogatory jokes, only one, or some number in between. The law at the extremes is relatively clear. A pervasive pattern of racial jokes of which the employer is aware can give rise to liability. *See, e.g., Taylor v. Jones*, 653 F.2d 1193 (8th Cir.1981). At the other end, a single isolated racial joke, unattended by *any* indicia of discriminatory animus, may not be sufficient in itself to establish a violation. *See, e.g., Bundy v. Jackson*, 641 F.2d 934 n. 9 (D.C. Cir. 1981).

727 F.2d at 1236 (emphasis in original). Like the facts presented to the *Carter* court, this case falls somewhere between the two extremes.

 These "other" discriminatory acts alleged by Mr. Nazaire were raised in a manner which can be called nebulous, at best. The complaint alleges that TWA "subjected Plaintiff to more tenuous circumstances of employment, unlike white employees, because he is black." R.1 at ¶ 9d. No exact dates for the alleged discriminatory behavior are alleged or established by the depositions and affidavits, although it appears that all of the actions of which Mr. Nazaire complains took place between 1970 and 1975. No grievances were ever filed, and the Union was never formally notified. Mr. Nazaire has not offered any proof that TWA was ever apprised of these offensive acts. We cannot say, based on the record, that Mr. Nazaire has adequately raised a claim based on these alleged "other" acts of discrimination. Indeed, Mr. Nazaire was invited by the district court at the February 14, 1983 status hearing to "notice up a motion for leave to file an amended complaint." R.43.

At oral argument, counsel for Mr. Nazaire conceded that no amended complaint had ever been filed. Accordingly, we hold that these vague allegations were insufficient to raise a question of material fact as to the existence of actionable racial harassment and summary judgment was proper on these claims. "To create a question of fact, an adverse party responding to a properly made and supported summary judgment motion must set forth specific facts showing that there is a genuine issue for trial." *Posey*, 702 F.2d at 105. Mere allegations are insufficient to defeat the motion as are bare contentions that a factual issue exists. *Id.*[7]

Accordingly, the judgment of the district court is affirmed.

AFFIRMED.

---

7. We note also that Mr. Nazaire alleges that he was discriminated against in retaliation for his filings of the 1979 and 1980 EEOC charges. We find that there is absolutely no support for this allegation in the pleadings or in any of the underlying documents.