Leroy SMITH, Jr., Plaintiff–Appellant,
Cross–Appellee,

v.

FIRESTONE TIRE AND RUBBER
COMPANY, Defendant–Appellee,
Cross–Appellant.

Nos. 88–1841, 88–1916.

United States Court of Appeals,
Seventh Circuit.

Submitted Feb. 10, 1989.

Decided May 26, 1989.

Gregory L. Barnes, Brinkoetter &
Barnes, P.C., Decatur, Ill., for plaintiff-appellant, cross-appellee.

C. Daniel Karnes, Jones Day Reavis & Pogue, Chicago, Ill., Glen D. Nager, Washington, D.C., for defendant-appellee, cross-appellant.

Before CUMMINGS, CUDAHY, and FLAUM, Circuit Judges.

CUMMINGS, Circuit Judge.

Plaintiff filed this action under 42 U.S.C. § 1981 on October 21, 1986, alleging that his employer, defendant Firestone Tire and Rubber Company ("Firestone"), demoted him on the basis of his race on September 20, 1984. Defendant's motions for summary judgment on the grounds of expiration of the statute of limitations and the absence of any genuine issues of material fact as to whether defendant's decision to demote plaintiff was motivated by race were denied on January 8 and 13, 1988, respectively. 675 F.Supp. 1134. The case was tried on March 29, 1988. On March 30, 1988, the jury informed the court that it was unable to reach a decision and was discharged. On March 31, 1988, Judge Mills granted defendant's motion for directed verdict on which he had earlier reserved ruling until deliberation of the jury and judgment was entered in favor of defendant. Plaintiff appeals the entry of directed verdict and defendant cross-appeals the denial of summary judgment based on the statute of limitations. We affirm.

## I.

### Statute of Limitations

Defendant contends that plaintiff's action, filed over twenty-five months from plaintiff's demotion, is barred by Illinois' two-year statute of limitations for personal injuries (Ill.Rev.Stat. ch. 110, ¶ 13–202 (1983)), rendered applicable to Section 1981 actions by *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987). Because Sections 1981 and 1983 do not contain a statute of limitations, courts applied various types of state statutes of limitations to the federal claims based on analogies to state causes of action, resulting in an undesirable lack of uniformity among jurisdictions. This inconsistency as to Section 1983 actions was resolved by *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), which held that for purposes of choosing the most appropriate state statute of limitations, Section 1983 claims are essentially claims for personal injury. Accordingly, the appropriate state statute of limitations for personal injury should be borrowed from the forum state. *Goodman* merely applied the holding of *Wilson* to Section 1981 claims. *Goodman*, 107 S.Ct. at 2621.

■ Defendant argues that *Goodman* should be applied retroactively to bar plaintiff's claim under the general rule that "cases should be decided in accordance with the law existing at the time of decision." *Goodman*, 107 S.Ct. at 2621. An exception to this general maxim exists where: (1) the decision at issue overrules clear precedent on which litigants may have relied or addresses an issue of first impression which was not foreshadowed; (2) retroactive application of the decision would retard the operation of a federal statute; and (3) retroactive application would result in substantial inequity. *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106–107, 92 S.Ct. 349, 355–356, 30 L.Ed.2d 296 (1971). We agree with the district court that such an exception to retroactive application is warranted here.

■ Prior to the decision in *Goodman* on June 19, 1987, precedent in this Circuit beginning with *Waters v. Wisconsin Steel Works*, 427 F.2d 476, 488 (7th Cir.1970), certiorari denied, 400 U.S. 911, 91 S.Ct. 137, 27 L.Ed.2d 151, 911, established that the Illinois five-year statute of limitations for residual claims (Ill.Rev.Stat. ch. 110, ¶ 13–205 (1983)), applied to actions under Section 1981. This case is therefore distinguishable from *Goodman* in which the Court determined that there was no clear precedent within the Third Circuit on which plaintiffs could have relied in filing their suit and applied the statute of limitations retroactively to the claims of that class of plaintiffs. Plaintiff here, however, was clearly justified in relying on this Court's case law applying the five-year statute of limitations prior to *Goodman*.

Conceding that the five-year statute of limitations had been applied to Section 1981 actions in this Circuit prior to *Goodman*, defendant argues that plaintiff should have been forewarned as to the holding in *Goodman* by the Supreme Court's earlier decision in *Wilson*. By analogy to Section 1983 actions, defendant contends, plaintiff should have concluded that Section 1981 actions would likewise be subject to the two-year Illinois personal injury statute of limitations.

This Court rejected similar reasoning in *Nazaire v. Trans World Airlines, Inc.*, 807 F.2d 1372, 1380 (7th Cir.1986). There this Court refused to apply the Illinois two-year statute of limitations to a Section 1981 action in spite of *Wilson* since " 'Section 1981 ... is more fundamentally concerned with injury to the contractual or economic rights of minorities [than Section 1983], and as such should appropriately be governed by the longer contract statute of limitations.' " *Nazaire*, 807 F.2d at 1380, quoting Judge Garth's dissent in the *Goodman* court of appeals decision, 777 F.2d 113, 132 (3rd Cir.1985). Accordingly, even after *Wilson*, this Circuit continued to apply the Illinois five-year statute of limitations to Section 1981 actions.

Even if plaintiff should have been on notice after *Wilson* but prior to *Goodman* that the statute of limitations in Section 1981 cases was an open question, his claim would nonetheless be timely filed under *Anton v. Lehpamer*, 787 F.2d 1141 (7th Cir.1986), which established transitional statutes of limitations for Section 1983 decisions which accrued prior to *Wilson*. In *Anton*, this Court decided that *Wilson* should not be applied retroactively to Section 1983 causes of action that accrued prior to that decision on April 17, 1985. Instead, such plaintiffs should be given the first to expire of either the five-year residual statute of limitations on which they may have relied or the two-year personal injury statute of limitations from the date of the *Wilson* decision.[1] Therefore even if plaintiff is deemed to have been on notice that the *Wilson* decision was likely to be extended to Section 1981 claims, he still met the *Anton* time limitations for actions accruing before *Wilson* by commencing this action within two years of the *Wilson* decision.

The second factor of the *Chevron* test, whether retroactive application of the law will further or retard the operation of a federal statute, militates in favor of prospective application of *Goodman* as well. Both *Goodman* and *Wilson* serve the interests of safeguarding the rights of federal civil rights litigants, achieving uniformity and certainty and minimizing unnecessary collateral litigation. *Wilson*, 105 S.Ct. at 1947–1949; *Goodman*, 107 S.Ct. at 2622. Fully retroactive application of *Goodman* would clearly interfere with the rights of federal litigants who were injured prior to *Goodman* by shortening the limitations period from five to two years. Further, the interests of uniformity and certainty will be only minimally affected by prospective application of *Goodman* since only those actions which accrued prior to *Goodman* would be subject to a different limitations period. Although for a period of time there will be two effective limitations periods, thereby temporarily undermining the goal of uniformity, the delineation is clearly demarcated by the date of the *Goodman* decision, reducing the likelihood of unnecessary litigation.

The final *Chevron* factor requires us to examine the inequity that may be caused by retroactively applying a shorter limitations period than previously applied by this Circuit. The inequity in terminating this action by a two-year statute of limitations while this Court's precedent clearly allowed the plaintiff five years to commence this

1. Accord, *Usher v. City of Los Angeles*, 828 F.2d 556 (9th Cir.1987); *Derstein v. Van Buren*, 828 F.2d 653 (10th Cir.1987). But see *Thomas v. Shipka*, 829 F.2d 570 (6th Cir.1987); *Smith v. Pittsburgh*, 764 F.2d 188 (3rd Cir.), certiorari denied 474 U.S. 950, 106 S.Ct. 349, 88 L.Ed.2d 297 (1985); *Wycoff v. Menke*, 773 F.2d 983 (8th Cir.1985); *Rivera v. Green*, 775 F.2d 1381 (9th Cir.1985), in each of which *Wilson* was applied retroactively either because in the former three cases there was no clear contrary precedent while in *Rivera* retroactive application would actually lengthen the period of filing for the plaintiff.

**1328**

litigation is self-evident. This is certainly not a situation where plaintiff "slept on his rights" and equity warranted retroactive application to cut off his cause of action. Plaintiff commenced this action well within the five-year statute of limitations applicable when his action accrued. Prospective application only of the *Goodman* decision is therefore clearly appropriate.

Consistent with *Anton* we hold that a plaintiff whose Section 1981 cause of action accrued prior to the decision in *Goodman* should be allowed to file that action within the period first to expire of: (1) five years from the accrual of the cause of action or (2) two years from the decision in *Goodman* on June 19, 1987.[2] Plaintiff's action is not time-barred under this rule.

## II.

### Directed Verdict

■ In reviewing the entry of a directed verdict by the district court, this Court must determine "whether a fairminded jury could return a verdict for the plaintiff on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). In order to establish a violation of Section 1981, plaintiff must have presented sufficient evidence to enable a reasonable jury to conclude that defendant's decision to demote plaintiff was motivated by his race. *Goodman*, 107 S.Ct. at 2623. Plaintiff may meet this burden by either direct evidence of the employer's discriminatory motive or circumstantial evidence showing that the employer's articulated rationale for demotion was merely a pretext for underlying discrimination. *United States Postal Service Board of Governors v. Aikens*, 460

U.S. 711, 716, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983).

■ We agree with the district court that plaintiff has failed to establish a case of racial discrimination.[3] However, we disagree with the district court's conclusion that plaintiff has failed to meet his prima facie case. Once a Section 1981 claim has been fully tried on the merits, the issue of whether plaintiff has established a prima facie case is no longer relevant. *Aikens*, 460 U.S. at 714–715, 103 S.Ct. at 1481–1482. If plaintiff has failed to make out a prima facie case of race discrimination, the district judge should grant the defendant's motion for directed verdict relieving the defendant of its burden of establishing nondiscriminatory reasons for the employment action.[4] "Where [as in this case] the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant." *Aikens*, 460 U.S. at 715, 103 S.Ct. at 1482. Accordingly, we address the ultimate issue of whether plaintiff has been the victim of his employer's racial discrimination.

The evidence presented at trial, appropriately viewed in the light most favorable to the plaintiff, reveals that plaintiff failed to perform his job satisfactorily on at least four separate occasions. Plaintiff entered employment with the defendant as an hourly employee at one of defendant's tire manufacturing plants in Akron, Ohio, in April 1968. He was eventually promoted to a supervisory position several years later, but was laid off in 1981 when defendant closed its Akron, Ohio, facilities. Plaintiff was able to find alternative employment as a supervisor in defendant's Decatur, Illinois, plant and was hired to work in the

**2.** See, however, *Baker v. Gulf & Western Industries, Inc.*, 850 F.2d 1480 (11th Cir.1988), and *Larkin v. Pullman–Standard Div., Pullman, Inc.*, 854 F.2d 1549 (11th Cir.1988), where *Goodman* was applied retroactively because no one statute of limitations had been applied to Section 1981 cases to establish clear precedent on which plaintiffs could have relied.

**3.** Indeed, plaintiff seems to recognize the futility of his argument in his brief which contains less

than five pages of argument replete with grammatical errors and which is devoid of sufficient substance to enable this Court to determine that any error was committed by the district court.

**4.** Defendant moved for a directed verdict at the close of both plaintiff's and defendant's cases. The district judge denied the first motion, but reserved ruling on the second, which was eventually granted following the jury deadlock.

"banbury" [5] department by its manager, Jerry Mills, beginning work on April 13, 1981.

Plaintiff's employment as a production supervisor in the banbury department was apparently satisfactory from the commencement of his employment until December 1983, after which four incidents occurred which defendant represents formed the basis for plaintiff's demotion. On January 4, 1984, one of the banbury machines under the supervision of plaintiff began to malfunction. Plaintiff diagnosed the problem as a failure of the automatic oil-injection system. He accordingly instructed two hourly employees to drop the oil manually into the machine. Subsequently, plaintiff received a phone call from his spouse informing him that her car was incapacitated. Plaintiff received permission to leave the factory to assist his wife, but failed to inform his supervisor of the machine malfunction. Plaintiff's supervisor later determined that 18,000 pounds of defective rubber had been processed by the malfunctioning machine. The malfunction was later found to be caused by a closed air valve. Plaintiff was reprimanded by Jerry Mills and a shift foreman, Gary Mollohan, for his failure to diagnose the cause of the mechanical malfunction accurately and for risking the safety of his workers by stationing them inside the banbury machine.

In June of 1984, plaintiff was observed by another shift foreman, Dale Hubner, lying with his eyes closed on a conveyor belt behind a banbury machine during work hours. Plaintiff denied actually sleeping on the conveyor belt and offered the alternative characterization that he was merely resting his eyes. He was reprimanded for this incident and was requested to take a few days' leave from work as discipline.

Plaintiff subsequently twice failed to report for work in August of 1984. The failure apparently resulted from plaintiff's neglect to check the work shift and overtime schedule. He was informed that a note documenting his failure to report would be placed in his personnel file.

The final incident occurred on September 7, 1984, when one of the machines under the supervision of plaintiff ran thirteen bad batches of rubber before the error in the rubber recipe was detected. Plaintiff offered the explanation that the operator of the machine must have changed the rubber recipe after plaintiff had checked it prior to initiating the machine. Jerry Mills, however, testified that it would have been physically impossible for the operator to have changed the recipe after the run was started and concluded that plaintiff must have failed to check the recipe prior to commencing the process or checked it inaccurately. Plaintiff was asked to take a period of vacation as a result of the incident. Upon returning to work, he was informed that due to the recent occurrences he was requested to resign voluntarily from his supervisory position to become an hourly employee or leave the employ of the defendant. Plaintiff chose the former option and this suit was commenced twenty-five months later.

Although at trial plaintiff disputed whether the four incidents were evidence of inadequate performance on the job, he did not deny that the incidents occurred. As proof that defendant's proffered reasons for demotion were pretextual, plaintiff produced evidence of statements made by Jerry Mills that plaintiff would not be promoted, that Mills did not like plaintiff's "type" and that one of plaintiff's "type" was enough. Plaintiff admits that Mills never specifically referred to plaintiff's race in making the above comments, although plaintiff assumed and it would be a reasonable inference that Mills was referring to plaintiff's race. Plaintiff offered no other evidence that any employment procedure had been ignored or that white supervisors were treated differently. In response to the statements offered by Smith as evidence that Mills harbored racial prejudice, the defendant presented evidence

**5.** The banbury department prepares raw materials according to a rubber recipe to be used in producing tires.

that Mills had hired the plaintiff initially, Mills demoted a white supervisor merely for sleeping on the job, and that Mills had promoted another black supervisor.

■ The standard for review of a directed verdict requires "this Court to view *all* of the evidence in the light most favorable to [the appellant]." *Panter v. Marshall Field & Co.*, 646 F.2d 271, 281 (7th Cir.), certiorari denied, 454 U.S. 1092, 102 S.Ct. 658, 70 L.Ed.2d 631 (1981), emphasis original (quoting *Chillicothe Sand & Gravel Co. v. Martin Marietta Corp.*, 615 F.2d 427 (7th Cir.1980)). Crediting as we must the statements offered by the plaintiff to be inferential evidence of racial prejudice, such statements are not, however, sufficient to demonstrate that the defendant relied on both legitimate and illegitimate criteria, or mixed motives. In its recent reexamination of mixed motive employment decisions, the Supreme Court determined that where a plaintiff has demonstrated that an illegitimate consideration was a substantial factor in the employment decision, the defendant must demonstrate by a preponderance of the evidence that the same decision would have been made absent the illegitimate motive. *Price Waterhouse v. Hopkins*, —— U.S. ——, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). As Justice O'Connor explained in her concurring opinion in *Price Waterhouse*, "stray remarks in the work place, while perhaps probative of sexual harassment, … cannot justify requiring the employer to prove that its hiring or promotion decisions were based on legitimate criteria." *Price Waterhouse*, —— U.S. at ——, 109 S.Ct. at 1804 (O'Connor, J., concurring). Such remarks, as offered by the plaintiff, when unrelated to the decisional process, are insufficient to demonstrate that the employer relied on illegitimate criteria, even when such statements are made by the decision-maker in issue. Plaintiff has failed to provide the requisite nexus between the statements made by the defendant and the demotion of the plaintiff to demonstrate that plaintiff's race was a "substantial factor" in the defendant's decision. The burden-shifting framework for mixed motive cases in *Price Waterhouse* is therefore inapplicable here.

Instead, employing the framework established in *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), we examine whether the legitimate reasons proffered by the defendant were the " 'true reasons' " for the demotion of Smith. *Price Waterhouse*, —— U.S. at ——, 109 S.Ct. at 1787 (Brennan, J., plurality), at ——, 109 S.Ct. at 1795 (White, J., concurring), at ——, 109 S.Ct. at 1800 (O'Connor, J., concurring).

We agree with the district judge that defendant demoted plaintiff for non-discriminatory reasons. Plaintiff has failed to offer any evidence, other than the statements by Mills, to demonstrate that the justifications offered by the defendant were pretextual. The statements made by Mills were not shown to be related to Smith's demotion and are simply insufficient to rebut the weight of the detailed and documented testimony by the defendant concerning Smith's work performance. Plaintiff's poor performance involved more than a single isolated incident of failing to appear for work on time. Several thousand pounds of defective rubber were produced on two separate occasions. In addition, plaintiff was found lying down on the job which plaintiff himself does not deny, claiming merely to have been resting his eyes. Plaintiff was also late for work on two other occasions. He was questioned and reprimanded regarding each of these occurrences, providing him with some opportunity to confront the criticism of him and improve his performance prior to his demotion. Although his job performance while employed with the defendant prior to 1984 was satisfactory, his quality of work during 1984 was seriously marred by the four incidents cited by defendant. Plaintiff cannot expect to be retained in a supervisory position based on his past performance in light of his sharply deteriorating performance in 1984. It is not our province to second-guess the business judgment of an employer where, as here, it acted on ample legitimate justification for demoting the plaintiff. *Mason v. Pierce*, 774 F.2d 825, 829 (7th Cir.1985).

The judgment of the district court is affirmed.